Argued and submitted January 16, reversed and remanded with instructions to enter judgment for defendant February 14, petition for review denied May 1, 2001
(332 Or 137)

William FERGUSON,
on behalf of Keanon Ferguson,
a Minor Child,
*Respondent,*

*v.*

PHOENIX-TALENT SCHOOL DISTRICT #4
OF JACKSON COUNTY, OREGON,
*Appellant.*

(00-3133-E-4; CA A112080)

19 P3d 943

Timothy C. Gerking argued the cause for appellant. With him on the briefs were Thaddeus G. Pauck, and Brophy, Mills, Schmor, Gerking & Brophy, LLP.

Jacob Tanzer argued the cause for respondent. On the brief was Thomas C. Howser.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Plaintiff is the father of and guardian *ad litem* for Keanon Ferguson. He brought this action, seeking mandatory injunctive relief to compel the defendant school district to restore Keanon to the position of student body president of Phoenix High School.[1] The district removed Keanon from the position after he appeared on school property in possession and smelling of marijuana at the beginning of the school day on June 13, 2000. Although plaintiff relied on various statutory and constitutional theories in the trial court, he does not pursue any constitutional argument here. The principal theory that he advances in this court is that the district had adopted disciplinary rules pursuant to ORS 339.240, that those rules comprehensively define the sanctions for various misconduct including drug infractions, that specific provisions of the rules that are applicable to Keanon allow only a four-week suspension from his office for this infraction, and that his removal therefore violates ORS 339.240. The district disagrees with each of those points and also, relying on ORS 339.250, contends that the written disciplinary rules are not comprehensive and that it has "inherent authority" to impose suitable additional discipline on "refractory students." The trial court agreed with plaintiff's principal theory and granted the injunctive relief that he sought. The district appeals, and we reverse.

ORS 339.240 provides:

"(1)   The State Board of Education in accordance with ORS 183.310 to 183.550 shall adopt rules setting minimum standards for pupil conduct and discipline and for rights and procedures pertaining thereto that are consistent with orderly operation of the educational processes and with fair hearing requirements. The rules shall be distributed by the Superintendent of Public Instruction to all school districts.

"(2)   Every district school board shall adopt and attempt to give the widest possible distribution of copies of

---

[1] Keanon was elected in the spring of 2000 to be student body president for the 2000-2001 school year beginning in September. Although the incident occurred before he assumed office, the district removed him from the position for the entire term for which he had been elected.

reasonable written rules regarding pupil conduct, discipline and rights and procedures pertaining thereto. Such rules must comply with minimum standards adopted by the State Board of Education under subsection (1) of this section.

"(3) Every district school board shall enforce consistently and fairly its written rules regarding pupil conduct, discipline and rights. This subsection does not apply to a pupil who is eligible for special education as a child with disabilities under ORS 343.035."

ORS 339.250 provides, in part:

"(3) The district school board may authorize the discipline, suspension or expulsion of any refractory student and may suspend or expel any student who assaults or menaces a school employee or another student. The age of a student and the past pattern of behavior of a student shall be considered prior to a suspension or expulsion of a student. As used in this subsection 'menace' means by word or conduct the student intentionally attempts to place a school employee or another student in fear of imminent serious physical injury."

The district has adopted rules of the kind contemplated by ORS 339.240 and has disseminated them in a student handbook. In addition to broadly stated provisions pertaining generally to student rights, conduct, discipline and sanctions, the rules contain extensive provisions relating to the impermissible use of drugs, alcohol and tobacco. They provide that any student who, like Keanon, commits a "first offense" involving the use or possession of an "illegal substance" is subject, among other things, to "[i]mmediate suspension for a period of five (5) days." With respect to students involved in "extracurricular activities," the rules further prescribe, as relevant, that the "[s]tudent will be immediately suspended from competition/performance for the next four (4) weeks." For purposes of the rules, "[e]xtra-curricular activities are defined as those activities separate from school classes." "Co-curricular activities" are a separate category and are defined as "those where required, graded, classroom performances occur beyond the school day."

The "principal's greeting" in the 2000-2001 Student Handbook contains a section on "student government," which states, in part:

"Student government is a vital ingredient to the successes of Phoenix High. Any student can have his/her concerns addressed by bringing them to leadership class. All students can work towards improving school conditions. Leadership class is the place for student-led decision making."

Article III of the constitution of Phoenix High School provides, as relevant:

"Section 1.   This student council shall consist of the elected student body officers, class officers, and a class representative from each class that meets the same period as leadership class.

"* * * * *

"Section 3.   Elected student officers must take the leadership class as long as offered for credit or no credit."

The threshold question is whether this action is judicially cognizable. As best the record reveals, the last action that the district took was in the form of a letter from the superintendent of the district to Keanon's parents, apprising them that:

"[T]his District has a firm policy against student use and possession of illicit drugs and alcohol on campus and it would send the wrong message to our student body if we allowed Keanon, under these circumstances, to remain student body president. We not only believe our decision promotes the District's anti-drug policy, we believe allowing Keanon to continue to serve as student body president would tarnish the school's image as a safe and drug-free institution that we have worked so hard to foster."[2]

The letter, like the disciplinary rules themselves, further advised that a right of appeal to the school board was available. However, Keanon and his parents apparently chose not to pursue that remedy. It is at least arguable that plaintiff's and Keanon's exclusive judicial recourse, if any, would have been through a writ of review of the school board's decision,

---

[2] As discussed below, the antidrug policy and the "role model" theory of deterrence are amply echoed in the written rules.

had an appeal to that body been brought. *See Pangle v. Bend-LaPine School District*, 169 Or App 376, 10 P3d 275 (2000).

However, plaintiff takes the view, which the trial court also found persuasive, that *Neuhaus v. Federico*, 12 Or App 314, 505 P2d 939, *rev den* (1973), indicates that a private right of action is available to enforce the requirements of ORS 339.240 and ORS 339.250. The plaintiffs in that case brought an action, claiming that their federal constitutional rights had been violated by their suspension from school for violating a rule governing male hair length. We decided that, before reaching the plaintiffs' constitutional arguments, we would first determine whether the hair length rule was consistent with state statutes, notwithstanding the fact that, apparently, the plaintiffs made no statutory argument. We concluded that the school board's authority to adopt rules governing student conduct pursuant to ORS 339.240 and ORS 339.250 was limited to the promulgation of "rules that have some reasonable connection with the educational process." *Id.* at 319. We noted that that conclusion was "reinforced" by the "consideration" that the students had a statutory right to attend public schools. *Id.* We then said, by way of summary:

> "Reading all of the above-quoted statutes together, it is clear that school officials' general authority to make and enforce rules can take precedence over students' rights to attend public school. That is to say, a student's right to attend school is necessarily subordinated to the school officials' right to enforce rules when enforcement results in the student's suspension or expulsion.
>
> "However, because there is this possible conflict between the students' right to attend and the school officials' right to suspend or expel, reading all the above-quoted statutes together leads to the further conclusion that rules of student conduct promulgated and enforced by school officials have to have some reasonable connection with the function of the schools. Otherwise, school officials could promulgate any rule they wished in such a manner that could effectively destroy the students' statutory right to attend public schools." *Id.* at 320-21.

Measured by those standards, we held that the hair length regulation was invalid.

There are fundamental differences between this case and *Neuhaus*. To name a few, the right to attend school is not at stake here and, unlike the plaintiffs in *Neuhaus*, plaintiff here does not challenge the district's authority to adopt the rules it did. Rather, the gravamen of his claim is that the district's actionable conduct was its *failure* to apply those rules—as plaintiff understands them—to Keanon according to their terms. Finally, unlike this plaintiff, the plaintiffs in *Neuhaus* did not invoke the court's jurisdiction or authority by reference to any rights or right of action under ORS 339.240 or ORS 339.250; rather, they pleaded an infringement of constitutional rights that clearly brought them within the court's cognizance, *see Pangle*, 169 Or App at 385-86, and authorities there cited.

Nevertheless, whatever the differences between this case and *Neuhaus* might be, we are constrained to agree with plaintiff that a case that is *decided* on the ground that the challenged disciplinary action violates ORS 339.240 is authority for the proposition that a party may *seek relief* on the same ground. Much of the authority that the district considers as contrary to that proposition in fact is not. The cases—mainly federal—on which the district relies do not seem to us to indicate that the courts lack jurisdiction or review authority, as distinct from holding that they have a very circumscribed scope of review over the disciplinary judgments of school officials. There is no inconsistency between the *latter* proposition and *Neuhaus*. *See, e.g., Burkitt et al. v. School Dist. No. 1, et al.*, 195 Or 471, 246 P2d 566 (1952). It is not necessary to reexamine here whether *Neuhaus* was correctly decided on the point in question, because plaintiff does not succeed even with its benefit.

■    We described the general contours of plaintiff's argument earlier in this opinion. More specifically, the linchpin of his argument is the requirement of ORS 339.240(3) that school districts must apply their written rules "consistently and fairly." The district has not done so here, according to plaintiff, because it has removed Keanon from his office when the rules provide only for a four-week suspension from an extracurricular activity in the case of a student guilty of a first violation of the antidrug policy.

The fundamental problem with plaintiff's argument is that student body office is not an "extracurricular activity," subject to the portion of the rules on which plaintiff relies. The elected officers are required to "take the leadership class as long as offered[.]" Of necessity, that class is not an activity "separate from school classes," which is part of the definition of an "extracurricular activity" in the illegal substance rules. Equally clearly, it constitutes a required classroom performance either "beyond the school day"—making it cocurricular—or during the school day—making it curricular. In either instance, it is not "extracurricular" as defined in the rules. Accordingly, Keanon was not subject to or benefitted by the rules pertaining to infractions of the drug policy by persons involved in "extracurricular activities," or to the limited suspension time that he understands those rules to prescribe.

■ It appears, however, that plaintiff's argument goes further than that. Portions of his brief and his oral argument can be understood to suggest that, apart from whether Keanon's office is expressly subject only to the limited suspension time prescribed for extracurricular activities, his removal from the office is impermissible in the absence of a rule that expressly authorizes the sanction of removal.

The district disputes the proposition that no disciplinary action can be taken unless both the precise conduct and the precise sanctions are memorialized in written rules. It maintains that school officials have "inherent authority" to discipline students, and it views the generalized provision in ORS 339.250(3) for disciplinary actions against "refractory" students—ranging upward to expulsion—as a recognition of that authority.[3] The parties disagree about the meaning of "refractory" and, hence, about the reach of ORS 339.250(3). Although they look at more or less the same dictionary definitions, plaintiff emphasizes the aspects of the definitions that suggest virtual incorrigibility, while the district

---

[3] Consistent with that view, and independent of its illegal substance provisions, the district's rules contain a general section relating to "disciplinary procedures" and specifying "levels of discipline" that range from warnings to expulsions.

emphasizes the definitional variations that equate "refractory" to less aggravated and more random forms of misbehavior. *See Steele v. Employment Department*, 143 Or App 105, 113-14, 923 P2d 1252 (1996), *aff'd* 328 Or 292, 974 P2d 207 (1999) (parties tend to avail themselves of selective parts of broad dictionary definitions that are most favorable to their narrow positions). The definition of "refractory" that we think comes closest to reflecting the legislature's meaning in ORS 339.250(3) is "resisting control or authority." *Webster's Third New Int'l Dictionary*, 1909 (unabridged ed 1993); *see also Steele*, 143 Or App at 113-14 (court is not required to view all dictionary definitions as equally plausible as used in a particular statute).

In our view, however, it is not particularly important to the decision of this case to determine the precise meaning of ORS 339.250(3) or the precise scope of its application. Rather, the importance of that statute here is that it undercuts any categorical theory that plaintiff may entertain to the effect that no school disciplinary sanction may be imposed under Oregon law, unless the infraction and the possible disciplinary actions that may follow from it are specifically set forth in written school district rules. Hence, ORS 339.250(3) serves as contextual support for the district's view that the rules adopted pursuant to ORS 339.240 are not intended to be an exclusive and exhaustive listing of all conduct that a school district may prohibit and of all disciplinary actions that it may take in response to specific forms of misconduct. Similarly, the text of ORS 339.240 is also consistent with the district's view rather than plaintiff's. The statute is replete with terms such as "minimum," "reasonable" and others that are indicative of nonexclusivity. By its terms, the statute does require consistency in the application of the rules. However, it does not require the rules to cover every possible circumstance, and it does leave school officials with some residual disciplinary authority, subject only to constitutional restraints and, arguably at least, to the statutory requirement of consistency and fairness.

In this case, the rules specifically prohibit Keanon's form of misconduct, but they do not specify the sanctions that may be imposed on him as a student body officer as they do for, say, football players and performers in the senior play. If

consistency is difficult to measure under these circumstances, fairness is not. The rules contain a two typewritten-page explanation of the need for a "strict drug and alcohol policy." That explanation emphasizes the deleteriousness of drug use, it's extensiveness among students, and the effect of adult and peer attitudes and practices on the emergence of drug use among younger students.

Given those factors, we cannot say that it was unlawful for the district to conclude and to act in accordance with its conclusion that a student who comes onto school property in possession of an illegal drug should not be permitted to serve as the highest student officer in the school. We emphasize that the question is not whether we agree with the sanction in the sense that it is the one we might have selected if that decision had been ours to make. The question for us is whether the decision was one that the school authorities could not lawfully or reasonably make, and it came nowhere close to being that.

Reversed and remanded with instructions to enter judgment for defendant.