Argued and submitted June 21, reversed and remanded August 28, petition for review allowed December 17, 1996 (324 Or 487)
See later issue Oregon Reports

David J. STEELE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Faris Sheet Metal,
*Respondents.*

(EAB No. 95-AB-877; CA A89252)

923 P2d 1252

Gerald Brask, Jr., argued the cause for petitioner. With him on the briefs were Amy Parks, Certified Legal Intern, James McCarthy, Certified Legal Intern, Robert Randall, Certified Legal Intern, Henry Webb, Certified Legal Intern and Lewis and Clark Legal Clinic.

Jas. Adams, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Faris Sheet Metal.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton, Judge.

DEITS, P. J.

**DEITS, P. J.**

Claimant was discharged after he missed work on two successive days, due to the after effects of alcohol use.[1] Claimant applied for and the Employment Appeals Board (EAB) held that claimant was disqualified from receiving unemployment benefits. It concluded that the discharge was for "misconduct connected with work" under ORS 657.176-(2)(a) and OAR 471-30-140(5). Claimant seeks review, and we reverse and remand.

EAB found that claimant is an alcoholic, and there was evidence that could support a finding that he cannot control his use of alcohol or the consequences of his drinking. However, EAB did not reach the question of whether claimant's absences and underlying alcohol use were or were not "volitional." Rather, it concluded that OAR 471-30-140, the Employment Department's[2] "Alcohol Adjudication Policy," makes alcohol-related absences disqualifying misconduct *per se*, for purposes of ORS 657.176(2)(a), without regard for whether the conduct is willful or otherwise accompanied by a culpable mental state. Claimant contends that EAB erred in holding that he was disqualified, without first considering whether and finding that his conduct was volitional.

ORS 657.176(2)(a) provides that a person is disqualified from receiving regular unemployment benefits if he or she "[h]as been discharged for misconduct connected with work." OAR 471-30-140(5) provides:

> "An employee who is discharged or suspended for failing to appear for work as a result of the use of alcohol is discharged or suspended for misconduct connected with work."[3]

---

[1] Claimant contends that there was no evidence to support the Employment Appeals Board's finding that there were alcohol-related absences on both days. He argues that the evidence allowed a finding that claimant missed work because of alcohol use on only one of the days. We disagree. There was evidence that supports the finding that he missed work both days because of alcohol use.

[2] The "Department" was formerly the "Division," and it appears under the latter name in many of the cases that we cite. In the text, we will use the present name in referring to the agency under its earlier as well as its current incarnation.

[3] Other provisions of OAR 471-30-140 apply to a variety of job-related and alcohol-related acts other than absences. Only subsection (5) is involved in this case.

That rule was promulgated in 1994, and its *per se* standard differs from the department's then and present *general* misconduct rule, OAR 471-30-038(3). Paragraph (a) of that rule provides:

"As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct."[4]

Moreover, under OAR 471-30-038(3)(b):

"Isolated instances or poor judgment, good faith errors, unavoidable accidents, *absences due to illness or other physical or mental disabilities*, or mere inefficiency resulting from lack of job skills or experience are not misconduct." (Emphasis supplied.)

The *per se* standard of OAR 471-30-140(5) also differs from a series of decisions by this court in cases applying the general misconduct rule to alcohol-related discharges. In *James River Corp. v. Employment Division*, 94 Or App 268, 765 P2d 217 (1988), *Kaeding v. Employment Division*, 72 Or App 392, 695 P2d 966 (1985), and *Christensen v. Employment Division*, 66 Or App 309, 673 P2d 1379 (1984), we reasoned that the claimants' actions that resulted in their firings, if caused by the illness of alcoholism, were not "willful" or disqualifying within the meaning of OAR 471-30-038(3). The cases rest on the conventional medical understanding that alcoholism can defeat the affected person's ability to control alcohol-related behavior and, therefore, can render that behavior nonvolitional. We concluded further that whether any particular infraction was the product of the disease instead of volition is a question of fact. *James River Corp.* made it somewhat clearer than the earlier cases had that an alcoholic person *can* sometimes act volitionally in connection

---

[4] OAR 471-30-038(1)(b) provides:

"As used in this rule, 'wantonly negligent' means indifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

with alcohol-related activities, but it nevertheless retained the rule that it is a question of fact whether a particular act is caused by volition or by uncontrollable impulses of the disease, and that the act is not disqualifying misconduct if its cause is the latter.[5]

"Misconduct connected with work," as used in ORS 657.176(2)(a), is a "delegative" statutory term that the Employment Department has policy-making authority to interpret and refine. *See Sun Veneer v. Employment Div.*, 105 Or App 198, 804 P2d 1174 (1991). As such, we may reject the department's interpretation or "explication" of the term only if it falls outside "the range of discretion allowed by the more general policy of the statute." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980). Claimant contends that OAR 471-30-140(5) fails that test because, insofar as it allows a determination of work-connected misconduct to be based on an alcoholic person's actions that are not actuated or accompanied by a willful or otherwise culpable mental state, it is directly contrary to the statute. According to claimant, mental states of that kind are contemplated by and embodied in the statutory term "misconduct connected with work."

The department responds, generally, that volitional mental states are not necessarily inherent in the phrase "misconduct connected with work," and that the *per se* disqualification standard in OAR 471-30-140(5) is within its delegated policy-making authority. The department asserts that claimant's reliance on OAR 471-30-038(3) is misplaced, as are his apparent attempts to import that rule's term "willful or wantonly negligent" into the statutory phrase; the statute does not itself contain that term and, the department notes, OAR 471-30-140(1) expressly provides that the Alcohol Adjudication "rule is an exception to OAR 471-30-038." The department also argues that *James River Corp.*, *Kaeding* and *Christensen* do not assist claimant, because those cases are simply applications of OAR 471-30-038(3); since that rule has

---

[5] In 1992, the department added "wanton negligence" to "willfulness" as part of the definition of "misconduct" in OAR 471-30-038(3). However, both terms import some form of culpable mental state. *See* note 4. OAR 471-30-140(5), of course, does not.

been replaced by OAR 471-30-140 as the one that applies to claims arising out of alcohol-related discharges, the department reasons that neither it nor the cases that rely on it are pertinent here.

Claimant argues, however, that several of this court's decisions that *predate* the 1979 promulgation of OAR 471-30-038 have interpreted the *statutory* term as requiring proof of a willful or otherwise culpable state of mind in order for disqualifying misconduct to be found. *See, e.g., Goodwin v. Emp. Div.*, 35 Or App 299, 303, 581 P2d 115 (1978); *Shed Cafe v. Employment Div.*, 30 Or App 639, 567 P2d 617 (1977); *Babcock v. Employment Div.*, 25 Or App 661, 664-65, 550 P2d 1233 (1976); *Geraths v. Employment Division*, 24 Or App 201, 204-05, 544 P2d 1066 (1976); *Bauer v. Morgan*, 16 Or App 132, 135, 517 P2d 689, *rev den* (1974).[6]

The department assails claimant's reliance on each of those cases, except one which it does not mention. It maintains variously that the language on which claimant relies consists of *dictum* (*Goodwin*), or that the cases do not hold what claimant finds in them (*Shed Cafe*), or that they "simply [quote] at length from Am Jur 2d" (*Geraths*). However, in *Babcock*, the case that the department does not discuss, we took a different view from the one it takes about the significance of *Geraths*, and we also very clearly restated the point that claimant attributes to the cited cases. We said:

> "*Geraths* was decided by this court after the decision in this case was handed down by the board. In that decision we pointed out that misconduct within the statute
>
> ' " '* * * must be an act of wanton or wilful disregard of the employer's interest * * *' " ' [quoting Am Jur 2d]." 25 Or App at 664-65.

After quoting further, we observed in *Babcock* that the language from the American Jurisprudence passage was quoted *with approval* in *Geraths*. 25 Or App at 665. Consequently, it is clear that neither *Geraths* nor *Babcock* is correctly read as simply reciting at length from the treatise. They adopt the

---

[6] At the times of those decisions, ORS 657.176(2)(a) referred to a person's discharge for "misconduct connected with his work." The difference between that and the current version of the term is not material to the issues here.

language of the treatise that they quote as the law of this state and, in particular, indicate that the wanton or willful disregard formulation is part of the test for finding disqualifying misconduct under ORS 657.176(2)(a).

In sum, we agree with claimant's understanding that, in cases decided before the promulgation of OAR 471-30-038 or any other agency rule defining the word, we interpreted the misconduct term in ORS 657.176(2)(a) as making a claimant's disqualification contingent on a showing that he or she acted willfully or with some other culpable mental state.[7]

The department argues, next, that those interpretations of the statute by *this* court, which predated *Springfield* and predated the department's promulgation of rules interpreting the statute, are not dispositive; it asserts that, unlike an interpretation of a statute by the Supreme Court, an interpretation by this court is not deemed to be part of the statute. *See Mathel v. Josephine County*, 319 Or 235, 240, 875 P2d 455 (1994). The department notes that the Supreme Court has not interpreted ORS 657.176(2)(a) with respect to the matter in question.

However, the Supreme Court has recognized that OAR 471-30-038(3), with its reference to willfulness as part of the definition of the statutory term "misconduct," "was

---

[7] The department also cites *Anderson v. Employment Division*, 25 Or App 845, 551 P2d 482, *rev den* (1976), to support its contrary view and describes that case as stating that " 'it is not at all apparent' that all disqualifications from receiving unemployment compensation are 'always based on a claimant's volitional act.' " ORS 657.176(2)(a) was not directly at issue in *Anderson*. However, the claimant in that case cited ORS 657.176(2)(a), among other provisions, in support of her contention that, as a general proposition, all disqualifications from benefits under ORS chapter 657 must be based on "volitional acts." We said, in rejecting that contention:

"Although not unreasonable, we find claimant's analysis of the statutory scheme unpersuasive. First, it is not apparent that all disqualifications are always based on a claimant's volitional act—the notable exception being the labor dispute disqualification, ORS 657.200." *Id.* at 849.

In its context, our statement cannot be read to imply that disqualifications for *misconduct* can result where volition or other culpable states of mind are absent. Although the claimant had specifically relied on the misconduct provision in her argument, the only example we gave of a nonvolitional ground for disqualification was ORS 657.200; that statute provides for ineligibility on the basis of a status of the claimant, not his or her conduct.

promulgated in 1979 to codify the Court of Appeals' holdings as to what constitutes misconduct under ORS 657.176(2)(a)." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 106, 862 P2d 1293 (1993); *see also Bunnell v. Employment Division*, 304 Or 11, 14-15, 741 P2d 887 (1987).

Be all of that as it may, we do not elect to base our decision here on whether, to what extent and with what effects our previous interpretations of ORS 657.176(2)(a) are *authoritative*; rather, the questions that we will treat as decisive are whether, upon reexamination, our previous interpretations are *correct* and, if so, whether the *per se* disqualification standard of OAR 471-30-140(5) is in conflict with the statute as so interpreted and, therefore, outside the permissible range of agency discretion under *Springfield*.

■ We look first to the text and context of the statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The word "misconduct" is not defined in the statute or related ones. We therefore attempt to discern the plain, natural and ordinary meaning of the word, by consulting dictionaries and any other appropriate sources. The definition of "misconduct" on which claimant relies primarily is to be found in *Webster's Third New International Dictionary* 1443 (unabridged 1993), and reads: "intentional wrongdoing: deliberate violation of a rule of law or standard of behavior." Claimant also cites with favor, *inter alia*, the part of the definition from *Black's Law Dictionary* 999 (6th ed 1990), that states:

> "Misconduct, which renders discharged employee ineligible for unemployment compensation, occurs when conduct of employee evinces willful or wanton disregard of employer's interest, as in deliberate violations."

The department answers:

> "Claimant first argues that the common meaning of 'misconduct' as used in the foregoing statute requires an element of wilfulness. Claimant has selectively chosen and only partially quoted dictionary definitions to make that point. For example, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1443 (Unabridged 1993) defines the noun misconduct in full as follows:

" '1. *mismanagement* esp. of governmental or military responsibilities ‹was charged with—of the war› 2: intentional wrongdoing: deliberate violation of a rule of law or standard of behavior esp. by a government official: malfeasance ‹one of his district judges has been removed from the bench * * * for official—H.H. Martin› 3a: *bad conduct*: *improper behavior* ‹was fined for—on the field› b: sexual immorality; esp: adultery ‹charged her husband with—›.'

"(Emphasis added). That definition, at least in part, supports an interpretation of misconduct that involves bad or improper conduct without the element of wilfulness.

"Other dictionary definitions do not at all support claimant's argument. For example, BALLENTINE'S LAW DICTIONARY (1969) defines misconduct as:

" 'Improper conduct. A transgression of some established and definite rule of action, where no discretion is left, except what necessity may demand; a violation of definite law; a forbidden act.'

"The AMERICAN HERITAGE DICTIONARY (1979) defines misconduct as:

" '1. Behavior not conforming to prevailing standards or laws; impropriety; immorality. 2. Dishonest or bad management, especially by persons entrusted or engaged to act on another's behalf. 3. Malfeasance, especially by public officials.' "

The department asserts that dictionary definitions provide abundant opportunities for selective use and self-help. *See Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 712 P2d 87 (1985). Although we agree generally with the department's proposition, the reason why good dictionaries offer those opportunities is that many of the words in our language have several meanings or shades of meaning. However, it does not follow from the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford

and go far in identifying the intended meaning of the word as used in the statute. Here, we conclude that the definitions on which claimant relies, rather than those the department emphasizes, are the ones that comport with the intended meaning of "misconduct" in ORS 657.176(2)(a).

For example, one of the definitions of "misconduct" on which the department relies to demonstrate that culpability may not always be required is the word "mismanagement" in part 1 of the Webster definition. However, that part of the definition has no bearing on the meaning of "misconduct" in this statute. The example the dictionary gives of the use of the word as defined in part 1 is "[unnamed person] was charged with misconduct of the war." If "misconduct" in the statute encompassed "mismanagement" of that kind, simple acts of negligence or even misjudgment would be disqualifying. As we will discuss subsequently, in view of the context of the statute, that is not a plausible understanding of what "misconduct" means as used in it.[8]

On the other hand, the part of the Webster definition on which claimant depends, *i.e.*, "deliberate violation of a rule of law or standard of behavior," is general in its scope and can quite logically be read as embracing circumstances of the kind at which ORS 657.176(2)(a) is directed. Notably, that definition of "misconduct" is highly similar in its substance, and even its word choice, to the department's own general rule, which defines the same word in the statute, *inter alia*, as a "willful * * * violation of * * * standards of behavior." It is also noteworthy that, in *Fairview Hospital v. Moore*, 28 Or App 637, 640, 560 P2d 671 (1977), we relied on the definition in an earlier edition of Webster in interpreting the word "misconduct" in ORS 240.555, another statute pertaining to employee mal- or misfeasance. We said, citing Webster, that "the plain meaning of misconduct includes the element of 'intentional wrongdoing.'" Additionally, we expressed agreement with the Employment Relations Board's interpretation that the statutory term "connotes at least some degree of volitional conduct on an employe[e]'s part."

---

[8] Generally speaking, we do not read the other definitions quoted by the department as lending support to its view that "misconduct" can be read as referring to circumstances where the actor is nonculpable.

In addition to the support that it finds in the apposite part of the Webster definition, claimant's position is even more squarely supported by the definition in *Black's Law Dictionary* on which he relies: It refers to statutes of precisely the kind in question, and it plainly denotes that some culpable mental state is an element of "misconduct" as used in such statutes.

On the basis of the foregoing, we adhere to the view expressed in our earlier cases that the text of the phrase "misconduct connected with work" in ORS 657.176(2)(a) imports an element of willfulness, intent or some other culpable state of mind. The statutory context also supports the same conclusion. The first noteworthy related statutory provision is ORS 657.176(3), which pertains to disqualifications when "an individual was discharged for misconduct because of the individual's commission of a felony or theft in connection with the individual's work." All thefts and the great preponderance of felonies involve intentional misconduct. We believe that that fact is instructive because, as far as we can find, ORS 657.176(3) is the only provision that both repeats in substance the "misconduct" formulation of ORS 657.176-(2)(a) and deals with specific examples of acts that constitute misconduct connected with work.[9]

As noted earlier, ORS 240.555, one of the state personnel relations statutes, includes "misconduct" as one of the bases for disciplinary action. As also noted, we held in

---

[9] In 1995, the legislature enacted the following provision now codified as ORS 657.176(9):

"(a) For the purposes of subsection (2) of this section, an individual is considered to have committed a disqualifying act when the individual fails to comply with the terms and conditions of a reasonable policy established by the employer, which may include blanket, random, periodic and probable cause testing, that governs the use, sale, possession or effects of controlled substances or alcohol in the workplace.

"(b) The department shall adopt rules to carry out the provisions of this subsection.

"(c) As used in this subsection, 'controlled substance' has the meaning for that term provided in ORS 475.005."

We have had no occasion to address that provision. It is not applicable here, because no policy of the employer was found to be involved, and EAB's decision does not purport to be based on ORS 657.176(9) or any rule promulgated pursuant to it. OAR 471-30-140(5) was the sole basis for the decision.

*Fairview Hospital* that the plain meaning of the term, as used in that statute, is "intentional wrongdoing," and that it "connotes at least some degree of volitional conduct." 28 Or App at 640. Given their mutual use of the word "misconduct" in related connections, ORS 240.555 is part of the context of ORS 657.176(2)(a) for purposes of our analysis,[10] and it also supports our conclusion.

Of less relevance, but nevertheless within the realm of "context," are other provisions in ORS chapter 657 that relate to ineligibility for or disqualification from benefits. ORS 657.213 makes persons ineligible for benefits if they are convicted of "willfully making" false statements, misrepresentations or omissions in connection with obtaining benefits. ORS 657.215 establishes a 26-week disqualification for persons who engage in but are not convicted of essentially the same willful conduct. On the other hand, ORS 657.310 provides that, "irrespective of the knowledge or intent of the person," a person who makes misrepresentations or nondisclosures, resulting in the payment of benefits to which the person was not entitled, is liable for repayment or deduction from future benefits of the wrongly paid amounts. ORS 657.310 does not provide for a prospective disqualification from the receipt of benefits to which the person *is* entitled. Although the contextual relationship of the three statutes discussed in this paragraph and ORS 657.176(2)(a) is more tenuous than is the case with the other statutes that we have discussed, the pattern continues that culpability is the predicate for disqualification, at least where conduct rather than status or circumstances is the relevant factor. *See* note 7.

Like the earlier decisions of this court, the text and the context point uniformly in the same direction: To be disqualifying "misconduct connected with work" under ORS 657.176(2)(a), the wrongful act or omission must be undertaken with at least some level of volition or some mental state that makes the actor culpably accountable for the action or failure to act. Insofar as OAR 471-30-140(5) makes absences due to alcohol use a *per se* basis for the disqualification of an alcoholic claimant, without requiring some culpability or

[10] ORS 240.555 was amended after we interpreted it in *Fairview Hospital*. The amendment is not material to the issue here.

even allowing consideration of the claimant's mental state, it is contrary to the statute and beyond the department's delegated authority. *Springfield; Cook v. Workers' Compensation Department*, 306 Or 134, 758 P2d 854 (1988); *U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 542 P2d 900 (1975). Insofar as EAB applied the rule and failed to consider whether claimant's absences were the product of his disease and beyond his volitional control, it erred.

Some further comment is necessary for the guidance of EAB and the parties on remand. It will be noted that, throughout this opinion, we have summarized the showing that ORS 657.176(2)(a) requires by using generally worded phrases such as "willfulness or some other culpable mental state"; correspondingly, we have not adhered rigidly to the specific terminology used in our earlier cases interpreting ORS 657.176(2)(a) or in the dictionary definitions of "misconduct" that we have found apposite. The reason for our choice of phrasing is not simply that the specific wording in the different cases and definitions varies somewhat (although that is so). The more important reason is that, at least for purposes of this opinion, we are prepared to hold only that the department has exceeded the range of its policy discretion under ORS 657.176(2)(a) *only* insofar as its rule provides that alcohol-related acts can be disqualifying misconduct in the absence of *any* culpable mental state. Stated differently, this opinion does not foreclose the department in its policy-making role, or EAB in its adjudicative role, from articulating *what* mental state or states may suffice to show misconduct, subject to our review.

As noted, our earlier cases have made the point in a variety of ways. The phrase we used in *Goodwin* was "wilful, conscious, *and* in derogation of the interests of the employer." 35 Or App at 303 (emphasis supplied). On the other hand, the standard that we quoted with approval in *Babcock* was "wanton *or* wilful disregard of the employer's interest." 25 Or App at 665 (emphasis supplied). We do not read the authorities that we have discussed as making immutable principles of law out of the particular word formulations they have used. Rather, the thrust of our earlier cases and of this one is simply that the term "misconduct" in ORS 657.176(2)(a) cannot

be read as contemplating a "no fault" basis for disqualification. *See Goodwin*, 35 Or App at 303. However, the department's rule requires and EAB's decision here would achieve exactly what the statute does not permit.

There is no automatic correlation between volition and action in cases where alcoholism or certain other mental conditions are present, because the condition can sometimes put the acts beyond the actor's control. Unlike some other situations where, arguably, an inference of volition might tenably be drawn from the fact that a particular act was committed, any connection between an alcoholic person's substance-related acts and his or her ability to exercise volition with respect to those acts cannot be categorically intuited but can only be established by proof in specific cases. The department refers to that fact and to the line of our cases culminating in *James River Corp.*, and states:

> "[I]t is difficult to determine whether subpar performance adversely affected by alcoholism, including missing work due to use of alcohol, is truly 'volitional' or 'deliberate.' Our society's attitudes on that subject are complex, as this court noted in *Kaeding*, and it is likely that expert opinions *pro* and *con* could easily be obtained in administrative cases. It was to eliminate that kind of dilemma that the Employment [Department] promulgated [OAR 471-30-140(5)] * * *."

We conclude, however, that any difficulty in proving or finding the fact provides no justification for dispensing by rule with the statutory requirement that the fact be established.

The basis for our disposition makes it unnecessary for us to reach the parties' other arguments.

Reversed and remanded.