27 P.3d 1186 (2001)
107 Wash.App. 411
Craig LEIBBRAND, Appellant,
v.
EMPLOYMENT SECURITY DEPARTMENT of the State of Washington, Respondent.
No. 47149-0-I.
Court of Appeals of Washington, Division 1.
July 23, 2001.
*1188 Deanna J. Hawkins, Kent, for Appellant.
Laura J. Watson, Olympia, for Respondent.
*1187 COX, J.
Craig Leibbrand appeals the Employment Security Department's (Department) decision denying him unemployment benefits based on disqualifying misconduct. The final sentence of RCW 50.20.060, which precludes a claimant from arguing as a defense to disqualification that alcoholism caused the alleged misconduct, is constitutional. Substantial evidence supports the Department's determination that Leibbrand committed disqualifying misconduct. We affirm.
Leibbrand worked for Boeing as an assembler/installer from 1978 until December 1998. Under Boeing's written attendance policy, "[u]nreported absences of four or more consecutive workdays and/or six consecutive days of reported but unexcused consecutive workdays, may result in dismissal...." Boeing provides a copy of its written attendance policy to all employees.
In the fall of 1998, Leibbrand was struggling with alcohol dependency and accumulated more than one hundred hours of unexcused absences. As a result, Boeing counseled Leibbrand about his attendance problems and issued a corrective action memo warning that his "failure to demonstrate and maintain satisfactory attendance will result in additional disciplinary action to include suspension or dismissal."
That December, Leibbrand was absent for six consecutive workdays due to problems associated with his alcoholism. He was scheduled to work on December 9 through December 11, and December 14 through December 16 of 1998. He failed to appear for work or contact Boeing between December 9 and December 11. He failed to go to work again on Monday the 14th, but called Boeing and left a voice message asking that he be allowed sick leave for the prior three days. However, he had no accrued sick or vacation leave available to him at that time. Leibbrand missed work again the next day, and did not contact his employer. When he failed to report for work again on the 16th, he attempted to call his supervisor but was unable to get through. Effective that day, Boeing discharged him for violating its attendance policy.
After his discharge, Leibbrand applied for unemployment benefits. The Department denied benefits on the ground that his absences constituted work-related misconduct. Leibbrand requested a hearing, and the administrative law judge (ALJ) affirmed the Department's decision based on RCW 50.20.060. The last sentence of that statute precludes a claimant from arguing as a defense to disqualification that alcoholism caused the alleged misconduct.
The Commissioner affirmed the ALJ's order, and Leibbrand appealed to the trial *1189 court, which affirmed the Department's final decision.
Leibbrand appeals.

Constitutionality of Statute
Leibbrand argues that RCW 50.20.060, which precludes a claimant from arguing as a defense to disqualification that alcoholism caused the alleged misconduct, is unconstitutional. He asserts that the Department thus erred by relying on that statute in denying his application for benefits. We hold that the statute is constitutional.
The Administrative Procedure Act (APA) governs our review of the Commissioner's final decision.[1] We may reverse such an administrative decision if "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied," or "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court....."[2] In reviewing the Department's actions, we sit "in the same position as the superior court, applying the standards of the []APA directly to the record before the agency."[3] The Commissioner's decision is prima facie correct, and Leibbrand bears the burden of establishing his right to benefits.[4]
We review constitutional challenges to a statute de novo.[5] A "statute is presumed constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt."[6]
The Department denied Leibbrand's application for benefits on the basis that his absences constituted disqualifying misconduct. RCW 50.20.060 disqualifies an individual from receiving unemployment benefits when he or she is discharged from employment for work-related misconduct. The statute states that:
An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work and thereafter for seven calendar weeks and until he or she has obtained bona fide work in employment covered by this title and earned wages in that employment equal to seven times his or her weekly benefit amount. Alcoholism shall not constitute a defense to disqualification from benefits due to misconduct.[7]
Leibbrand argues that the last sentence of this statute is unconstitutional because it violates the equal protection provisions of the state and federal constitutions. He contends that the Legislature had no rational basis for distinguishing between alcoholics and non-alcoholics, and that the statute thus cannot pass constitutional muster.
We need not separately analyze Leibbrand's equal protection challenge under the state and federal constitutions.[8] When a party challenges a statute on equal protection grounds, courts apply a rational basis test if the challenged classification "neither involves a suspect or semisuspect class nor threatens a fundamental or important right."[9] Leibbrand does not argue that the statutory classification between alcoholics and non-alcoholics involves a suspect or semi-suspect class. Such an argument would appear *1190 to have no case authority to support it.[10] Thus, we apply the rational basis test.
The rational basis test "is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause."[11] Under this test, a statute is constitutional if (1) the classification applies alike to all members within the designated class; (2) some rational basis exists for reasonably distinguishing between those within the class and those outside the class; and (3) the challenged classification bears a rational relation to the purpose of the challenged statute.[12] We will uphold a legislative classification "unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives."[13]
In determining whether a rational relationship exists, we "may assume the existence of any necessary state of facts of which we can reasonably conceive."[14] Moreover, we may uphold the validity of such a classification based on "rational speculation unsupported by evidence or empirical data."[15] "The party challenging the legislation `must show, beyond a reasonable doubt, that no state of facts exists or can be conceived sufficient to justify the challenged classification, or that the facts have so far changed as to render the classification arbitrary or obsolete.'"[16]
Here, Leibbrand correctly concedes that the statute satisfies the first prong of the rational basis test: the classification applies alike to all members within the designated class of alcoholics. Turning to the second prong, however, he argues that the Legislature had no rational basis for distinguishing between alcoholics and non-alcoholics. He notes that RCW 50.20.060 allows a person suffering from a disease such as epilepsy or Tourette's syndrome to present evidence of that disease as a defense to disqualification from benefits for misconduct, but prevents a person suffering from alcoholism from doing the same. He argues that the Legislature could have had no rational basis for singling out alcoholics in such a manner.
Significantly, RCW 50.20.060 does not disqualify individuals from benefits based on their status as alcoholics. The statute simply eliminates evidence of alcoholism as a defense to disqualification based on misconduct, thereby allowing an employer to hold an alcoholic employee to the same performance and behavior standards as other employees.
When the Legislature enacted the final sentence of RCW 50.20.060 in 1982, it could well have decided to follow the rationale behind the Federal Rehabilitation Act, which excluded certain alcoholics from its definition of a handicapped individual. As amended in 1978, the Rehabilitation Act provided that the term "handicapped individual"
does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in *1191 question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.[17]
The more recent Americans with Disabilities Act (ADA) similarly distinguishes misconduct caused by alcoholism from that caused by other diseases. Although the ADA recognizes alcoholism as a disability, it does not protect unsatisfactory conduct caused by the disease.[18] In addition, a 1996 amendment to the Social Security Act eliminated alcoholism as a basis for disability awards.[19]
The Legislature could also have rationally distinguished between alcoholics and persons suffering from other diseases on the basis that alcoholics may be responsible, at least to some extent, for triggering the symptoms of their disease by taking the initial, affirmative step of drinking. The Legislature may also have decided that work-related misconduct arising from alcoholism is potentially more disruptive and detrimental than misconduct arising from other diseases. In light of such possible distinctions, as well as the federal legislation discussed above, we conclude that the Legislature had a rational basis for the distinction suggested by the statute.
With respect to the third prong of the rational basis test, Leibbrand argues that the challenged classification bears no rational relation to the purpose of the statute. He argues that disallowing evidence of alcoholism as a defense to an accusation of willful misconduct directly conflicts with the purpose of RCW 50.20.060, which is to disqualify from benefits only those individuals who are at fault for their own unemployment.
For support, Leibbrand relies on Steele v. Employment Dep't, in which the Oregon Court of Appeals concluded that an administrative regulation making absences due to alcohol use a per se basis for disqualification from benefits conflicted with a state statute disqualifying employees discharged for misconduct.[20] But the issue in that case was not, as it is here, whether the Legislature has the constitutional authority to statutorily exclude certain categories of individuals from receiving unemployment benefits. Rather, the issue before the Oregon court was whether the rule's per se disqualification standard conflicted with the statute, and was thus "outside the permissible range of agency discretion....."[21] The court ultimately determined that the department had indeed exceeded the scope of its delegated authority by enacting such a rule, and reversed on that basis.[22]
The purpose of the Employment Security Act is to provide unemployment benefits for "persons unemployed through no fault of their own ..."[23] Similarly, "the operative principle behind the disqualification for misconduct is the fault of the employee."[24] As discussed above, the Legislature could rationally have concluded that alcoholics are, to some extent, responsible for the onset of the symptoms of their disease, and should bear more responsibility for their workplace *1192 conduct than individuals suffering from other diseases.
Leibbrand also argues that RCW 50.20.060's elimination of alcoholism as a defense to disqualifying misconduct is unconstitutional because it contradicts specific legislative findings regarding alcoholism. He points specifically to RCW 70.96A.011, which states, in part, that: "[t]he legislature agrees with the 1987 resolution of the American Medical Association that endorses the proposition that all chemical dependencies, including alcoholism, are diseases." He also relies on RCW 70.96A.020(1), which defines an alcoholic as one "who suffers from the disease of alcoholism." Leibbrand simply argues that "[t]hese expressions of legislative intent and understanding of the disease of alcoholism are contradictory to the intent expressed in RCW 50.20.060."[25]
But these statutes are not a part of the Employment Security Act, and are unrelated to the distribution of unemployment compensation benefits. Moreover, Leibbrand has not shown how the Legislature's recognition of alcoholism as a disease conflicts with its decision to hold alcoholics to the same standards as non-alcoholics when determining eligibility for unemployment benefits. As discussed above, Congress has similarly recognized alcoholism as a disease in both the ADA and Rehabilitation Act, yet declined to protect workplace conduct arising from the disease.[26] Even assuming the presence of such a conflict, Leibbrand has cited to no authority to support his argument that this Court should invalidate RCW 50.20.060 because it conflicts with the legislative findings and intent portion of a wholly unrelated statute.
We hold that the final sentence of RCW 50.20.060, which precludes a claimant from arguing as a defense to disqualification that alcoholism caused the alleged misconduct, satisfies rational basis review.

Substantial Evidence
Leibbrand argues that the record lacks substantial evidence to support the Department's determination that he committed disqualifying misconduct. There was substantial evidence to support the decision below.
The Legislature has defined misconduct as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business."[27] In adopting that definition, the Legislature intended to ensure that the Department not deny benefits unless the employee's conduct was both willful and harmful to the employer.[28]
Whether an employee's actions constitute misconduct is a mixed question of law and fact.[29] On such questions, this Court determines the law independently and then applies the law to the facts as found by the agency.[30] Leibbrand has not challenged the Commissioner's findings of fact, which are deemed verities on appeal.[31]
Leibbrand first asserts that the record does not support the Department's determination that he acted in willful disregard of his employer's interests. He argues that he did not act willfully, or with the requisite level of intent, because his absences were due to alcoholism and were therefore beyond his control.
In support of this argument, Leibbrand submits authority indicating that alcoholism is a medically recognized disease, and that a person suffering from this disease may not have control of his own free will in order to deliberately commit the degree of misconduct *1193 that would serve to deprive him of unemployment compensation benefits. But because he failed to present these documents below or otherwise made them a part of the agency record, we do not consider them.[32]
This Court must presume that, when the Legislature defined misconduct in 1993 by enacting RCW 50.04.293, it was aware of RCW 50.20.060's elimination of alcoholism as a defense to disqualification for misconduct.[33] By retaining the final sentence of RCW 50.20.060, the Legislature effectively determined that an employee whose misconduct arises from alcoholism may nevertheless be acting in willful disregard of his or her employer's interests. The current statutory scheme effectively holds alcoholic employees to the same standards as non-alcoholic employees.
Here, the law required that the Commissioner determine whether Leibbrand committed misconduct without regard to the effect that his alcoholism may have had on his behavior. An employee acts with "willful disregard when he [or she] (1) is aware of his [or her] employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences."[34] Such willful disregard may be present when an employee violates a reasonable work-related rule, and violation of the rule was intentional, grossly negligent, or took place after notice or warnings.[35]
In Galvin, the claimant's employer warned and counseled her about her excessive absences.[36] The employer also informed her that she needed to obtain advance approval before taking vacation leave.[37] The claimant later took vacation without securing the requisite approval, and her employer discharged her.[38] This Court held that the claimant had acted with willful disregard of her employer's interest.[39]
Here, as in Galvin, Leibbrand's employer warned him about his excessive, unexcused absences and informed him that he could be discharged if his attendance did not improve. Within three weeks of receiving a written warning to that effect, Leibbrand missed six consecutive workdays. He made little attempt to contact his employer and gave Boeing no advance notice that he would not work as scheduled. He disregarded Boeing's written attendance policy and the prior warnings he had received. Such behavior constituted substantial evidence of willful misconduct.
Leibbrand next argues that the record contains insufficient evidence that his actions harmed his employer's business. We disagree.
To constitute misconduct, an employee's conduct must be harmful to the employer.[40] "[T]o establish that an employee's conduct had the effect of causing harm to the *1194 employer's business, actual detriment to the employer's operations must be objectively demonstrated."[41] Although the "harm suffered need not be tangible or economic, ... the Legislature intended that it be more than imaginary or theoretical."[42] In making that determination, this Court will examine each case on its own facts.[43] In Galvin, this Court recognized that excessive absences clearly affect an employer's interests.[44]
Here, the ALJ specifically found that:
[t]he claimant was employed in a time-sensitive, production environment. The employer has a schedule of work to be completed each day. The claimant's absence from work from December 9, 1998 through December 16, 1998, negatively impacted the employer's ability to complete the work scheduled to be completed each day.
A Boeing representative testified at the hearing that Leibbrand worked:
in a production environment [in which] everything is scheduled so that the work to be performed is done in a specific amount of time. Variations can occur, and then we would use overtime when necessary, but everyone we have on the payroll has a specific job, and it's important that they be there. Otherwise, it could impact schedules or their coworkers, who may end up having to work overtime to cover the work for the absent employee, which in turn, of course, would be a cost factor for the company, having to pay premium overtime.
This testimony established that Leibbrand's presence on the job was important to meet production deadlines. His repeated absences adversely affected Boeing's interest in having a predictable workforce. Substantial evidence supports the determination that his absences were harmful to his employer.
We affirm the decision denying Leibbrand's claim for unemployment benefits.
AGID, C.J., and BAKER, J., concur.
NOTES
[1] Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993).
[2] RCW 34.05.570(3)(a) & (e).
[3] Tapper, 122 Wash.2d at 402, 858 P.2d 494.
[4] RCW 50.32.150. See also RCW 34.05.570(1)(a) ("The burden of demonstrating the invalidity of agency action is on the party asserting invalidity.")
[5] State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm., 135 Wash.2d 618, 623, 957 P.2d 691 (1998).
[6] Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000) (citations omitted); cert. denied, __ U.S. ___, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001).
[7] (Italics ours.)
[8] In re Detention of Turay, 139 Wash.2d 379, 412, 986 P.2d 790 (1999), cert. denied, __ U.S. ___, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001).
[9] Merseal v. State Dept. of Licensing, 99 Wash. App. 414, 420, 994 P.2d 262, review denied, 141 Wash.2d 1021, 10 P.3d 1073 (2000).
[10] City of Richland v. Michel, 89 Wash.App. 764, 771-72, 950 P.2d 10 (1998) (noting that, "[a]lthough no Washington case has specifically ruled on the subject, it is doubtful that alcoholics would be considered a suspect class" because "[t]here is no history of `invidious discrimination' against alcoholics that must be rigorously prevented."). See also Mitchell v. Commissioner of the Social Security Administration, 182 F.3d 272, 274 (4th Cir.), cert. denied, 528 U.S. 944, 120 S.Ct. 358, 145 L.Ed.2d 280 (1999) (concluding "[a]lcoholics are neither a suspect nor a quasi-suspect class for purposes of equal protection analysis."); Gazette v. City of Pontiac, 41 F.3d 1061, 1067 (6th Cir.1994) (concluding that "[t]he status of being an alcoholic, or a recovering alcoholic, is not a suspect class for equal protection analysis, and so the lowest level of scrutiny applies....").
[11] State v. Shawn P., 122 Wash.2d 553, 561, 859 P.2d 1220 (1993) (citing Dallas v. Stanglin, 490 U.S. 19, 26, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989)).
[12] Campos v. Department of Labor and Indus., 75 Wash.App. 379, 385-86, 880 P.2d 543 (1994), review denied, 126 Wash.2d 1004, 891 P.2d 38 (1995).
[13] State v. Coria, 120 Wash.2d 156, 171, 839 P.2d 890 (1992); Seeley v. State, 132 Wash.2d 776, 795, 940 P.2d 604 (1997).
[14] In re Detention of Brooks, 94 Wash.App. 716, 721, 973 P.2d 486 (1999).
[15] In re Brooks, 94 Wash.App. at 721, 973 P.2d 486 (citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).
[16] Seeley, 132 Wash.2d at 795-96, 940 P.2d 604 (quoting State v. Smith, 93 Wash.2d 329, 337, 610 P.2d 869 (1980)).
[17] See Pub.L. No. 95-602 § 122, 92 Stat. 2955 (1978) (then codified at 29 U.S.C. § 706(7)(B)). See now, 29 U.S.C. § 705(20)(C)(v) (1998) (stating that the term "`individual with a disability' does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.").
[18] See 42 U.S.C. § 12114(c)(4) (an employer "may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee...."); See Nielsen v. Moroni Feed Company, 162 F.3d 604, 609 (10th Cir.1998).
[19] 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled.").
[20] 143 Or.App. 105, 923 P.2d 1252 (1996).
[21] Steele, 923 P.2d at 1255.
[22] Steele, 923 P.2d at 1258.
[23] RCW 50.01.010.
[24] Tapper, 122 Wash.2d at 409, 858 P.2d 494.
[25] Brief of Appellant at 22.
[26] See 42 U.S.C. § 12114(c)(4); 29 U.S.C. § 705(20)(C)(v).
[27] RCW 50.04.293.
[28] Hamel v. Employment Sec. Dep't, 93 Wash. App. 140, 145, 966 P.2d 1282 (1998), review denied, 137 Wash.2d 1036, 980 P.2d 1283 (1999).
[29] Dermond v. Employment Sec. Dep't, 89 Wash. App. 128, 132, 947 P.2d 1271 (1997).
[30] Hamel, 93 Wash.App. at 145, 966 P.2d 1282.
[31] RAP 10.3(g); Tapper, 122 Wash.2d at 407, 858 P.2d 494.
[32] RCW 34.05.558 (judicial review must be confined to the agency record). Under RCW 34.05.562, this Court may receive additional evidence "only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding: (a) [i]mproper constitution as a decision-making body or grounds for disqualification of those taking the agency action; (b) [u]nlawfulness of procedure or of decision-making process; or (c) [m]aterial facts.... not required to be determined on the agency record." None of these exceptions apply here.
[33] Elford v. City of Battle Ground, 87 Wash.App. 229, 235, 941 P.2d 678 (1997), review denied, 135 Wash.2d 1001, 959 P.2d 126 (1998) (when the Legislature amends a statute, this Court will presume that it considered earlier enactments dealing with the same subject matter).
[34] Haney v. Employment Sec. Dep't, 96 Wash. App. 129, 139, 978 P.2d 543 (1999) (alterations in original) (quoting Hamel, 93 Wash.App. at 146-47, 966 P.2d 1282).
[35] Galvin v. Employment Sec. Dep't, 87 Wash. App. 634, 643, 942 P.2d 1040 (1997), review denied, 134 Wash.2d 1004, 953 P.2d 95 (1998).
[36] Galvin, 87 Wash.App. at 636-37, 942 P.2d 1040.
[37] Galvin, 87 Wash.App. at 637, 942 P.2d 1040.
[38] Galvin, 87 Wash.App. at 638, 942 P.2d 1040.
[39] Galvin, 87 Wash.App. at 646-47, 942 P.2d 1040.
[40] Dermond, 89 Wash.App. at 133, 947 P.2d 1271.
[41] Haney, 96 Wash.App. at 134, 978 P.2d 543 (quoting Dermond, 89 Wash.App. at 135-36, 947 P.2d 1271).
[42] Haney, 96 Wash.App. at 134, 978 P.2d 543 (quoting Dermond, 89 Wash.App. at 135, 947 P.2d 1271).
[43] Dermond, 89 Wash.App. at 136, 947 P.2d 1271.
[44] Galvin, 87 Wash.App. at 646, 942 P.2d 1040.