[No. 30864-9-II. Division Two. October 19, 2004.]

KENNETH E. STEPHENS, JR., *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Deanna J. Hawkins*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Sharon S. Eckholm, Assistant*, for respondent.

ARMSTRONG, J. — Kenneth Stephens appeals from a decision affirming the denial of unemployment benefits based on disqualifying misconduct. He claims that the statute excluding alcoholism as a defense to an employer's misconduct justification violates the equal protection clause. He also claims that substantial evidence does not support the decision. We affirm.

FACTS

Stephens began working for the Boeing Company on January 16, 1989. He took two leaves of absence for alcohol treatment (one in November 1990 and another in January-February 1991) and thus had to participate in Boeing's employee assistance program. As a result, Boeing issued its first "Last Chance Memorandum" to Stephens in February 1991. It detailed the conditions of his further employment, including discharge as a remedy for failed alcohol treatment.

In March 1999, Stephens filed a third leave of absence for alcohol treatment and, consequently, Boeing issued him a second "Last Chance Memorandum" requiring him to com-

ply with all conditions for three years or face discharge. Specifically, paragraph 1b provided:

> Any future absence from work or other work-related problem . . . directly or indirectly caused by my violation of this memorandum, by drug or alcohol use since my return to work, or by any need to be absent from work for further treatment, shall be grounds for immediate termination from the Company's employment.

Ex. 10, Commissioner's R. (CR) at 114. The agreement also provided: "g) These terms and conditions will remain in effect for a three-year period commencing on the date indicated below." CR at 114.

In February 2001, before the end of this three-year period, Stephens admitted himself for additional inpatient alcohol treatment. This violated the terms of his second "Last Chance Memorandum" and Boeing terminated his employment on March 1, 2001.

In the proceedings before the Department of Employment Security below, Stephens and Boeing stipulated to the following facts:

> 1. Mr. Stephens worked as an aircraft electrician for the Boeing Company from January 16, 1989 to March 1, 2001;
>
> 2. As a condition of future employment, Mr. Stephens signed "Last Chance Memorandums" (Exhibits 10 and 12) on February 1, 1991 and on June 18, 1999;
>
> 3. Mr. Stephens did not violate the terms of the February 1, 1991 Last Chance Memorandum.
>
> 4. On February 22, 2001, Mr. Stephens voluntarily checked himself into Lakeside/Milam Recovery Center in Everett, Washington for inpatient treatment of his alcoholism;
>
> 5. At the time he checked himself into Lakeside/Milam, Mr. Stephens knew that doing so could be considered a violation of the terms of the June 18, 1999 Last Chance Memorandum;
>
> 6. On March 1, 2001, the Boeing Company terminated Mr. Stephens for allegedly violating the terms of paragraph 1(b) of the June 18, 1999 Last Chance Memorandum.
>
> 7. The Boeing Company did not terminate Mr. Stephens for any alleged attendance violation;

8. The Boeing Company did not terminate Mr. Stephens for testing positive for alcohol consumption.

9. These stipulations do not preclude the Boeing Company from arguing that it was harmed by Mr. Stephens' absence from work on and after February 22, 2001.

CR at 117-18.

Stephens then applied for unemployment benefits. The Department of Employment Security (ESD) denied his claim, reasoning that his failure to comply with the conditions of his employment within his control constituted misconduct under former RCW 50.20.060 (2000),[1] thereby disqualifying him from benefits.

Stephens contested this decision and, following a hearing, an administrative law judge (ALJ) upheld the ESD decision. The ALJ found that (1) Stephens made a "knowing and informed decision to return to inpatient treatment for his alcoholism;" (2) this was an intentional act; (3) it harmed his employer "to the extent the employer contributes to the cost of such treatment for its employees, and to the extent of any costs incurred by the interested employer due to the absence of a trained employee such as the claimant;" (4) it constituted misconduct disqualifying him for benefits; and (5) alcoholism was not a defense. CR at 135.

Stephens petitioned for review of this decision, which an ESD commissioner affirmed. He then appealed to the trial court, which affirmed the commissioner's decision.

---

[1] Former RCW 50.20.060 (2000) provided:

An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work and thereafter for seven calendar weeks and until he or she has obtained bona fide work in employment covered by this title and earned wages in that employment equal to seven times his or her weekly benefit amount. Alcoholism shall not constitute a defense to disqualification from benefits due to misconduct.

### DISCUSSION

Stephens claims that the agency decision fails four of the nine statutory reasons set out in RCW 34.05.570(3):

(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;

. . . .

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

. . . .

(i) The order is arbitrary or capricious.

## 1. *Equal Protection*

▮ Stephens first claims that the statutory prohibition against claiming alcoholism as a defense in RCW 50.20.060 violates the equal protection clause. Such a claim requires a three-part analysis:

"First, does the classification apply alike to all members within the designated class? Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? Third, does the challenged classification have any rational relation to the purposes of the challenged statute?"

*Berland v. Employment Sec. Dep't*, 52 Wn. App. 401, 406, 760 P.2d 959 (1988) (quoting *Conklin v. Shinpoch*, 107 Wn.2d 410, 418, 730 P.2d 643 (1986)).

As to the first part, Stephens concedes that the statute applies equally to all members within the designated class.

As to the second part, he argues that there is no basis in reality for singling out individuals with alcoholism and barring them from having a defense to an accusation of

misconduct arising from their disease. He posits that an employee absent because of inpatient chemotherapy or emergency follow-up surgery to correct a mistake in an earlier surgery could present his illness as a defense.

As to the third part, he claims that the statutory ban has no rational relationship to the purposes of the Employment Security Act, ch. 50.01 RCW. He argues that the purpose of the act's disqualification rule is that it applies when the misconduct is the employee's fault, the employee has a wrongful intent, and the employee's act harms the employer. He claims that barring an alcoholism defense is directly contrary to these purposes.

■ These are strikingly similar to claims that Division One considered and rejected in *Leibbrand v. Employment Security Department*, 107 Wn. App. 411, 426, 27 P.3d 1186 (2001):

> Here, Leibbrand correctly concedes that the statute satisfies the first prong of the rational basis test: the classification applies alike to all members within the designated class of alcoholics. Turning to the second prong, however, he argues that the Legislature had no rational basis for distinguishing between alcoholics and non-alcoholics. He notes that RCW 50.20.060 allows a person suffering from a disease such as epilepsy or Tourette's syndrome to present evidence of that disease as a defense to disqualification from benefits for misconduct, but prevents a person suffering from alcoholism from doing the same. He argues that the Legislature could have had no rational basis for singling out alcoholics in such a manner.
>
> . . . .
>
> When the Legislature enacted the final sentence of RCW 50.20.060 in 1982, it could well have decided to follow the rationale behind the Federal Rehabilitation Act, which excluded certain alcoholics from its definition of a handicapped individual. As amended in 1978, the Rehabilitation Act provided that the term "handicapped individual"
>
>> does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or

drug abuse, would constitute a direct threat to property or the safety of others.

The more recent Americans with Disabilities Act (ADA) similarly distinguishes misconduct caused by alcoholism from that caused by other diseases. Although the ADA recognizes alcoholism as a disability, it does not protect unsatisfactory conduct caused by the disease. In addition, a 1996 amendment to the Social Security Act eliminated alcoholism as a basis for disability awards.

The Legislature could also have rationally distinguished between alcoholics and persons suffering from other diseases on the basis that alcoholics may be responsible, at least to some extent, for triggering the symptoms of their disease by taking the initial, affirmative step of drinking. The Legislature may also have decided that work-related misconduct arising from alcoholism is potentially more disruptive and detrimental than misconduct arising from other diseases. In light of such possible distinctions, as well as the federal legislation discussed above, we conclude that the Legislature had a rational basis for the distinction suggested by the statute.

*Leibbrand*, 107 Wn. App. at 419-21 (footnotes omitted). For these same reasons, we agree that the legislature had a rational basis for singling out alcoholics.

With respect to the third prong of the rational basis test, Leibbrand argues that the challenged classification bears no rational relation to the purpose of the statute. He argues that disallowing evidence of alcoholism as a defense to an accusation of willful misconduct directly conflicts with the purpose of RCW 50.20.060, which is to disqualify from benefits only those individuals who are at fault for their own unemployment.

. . . .

The purpose of the Employment Security Act is to provide unemployment benefits for "persons unemployed through no fault of their own. . . ." Similarly, "the operative principle behind the disqualification for misconduct is the *fault* of the employee." As discussed above, the Legislature could rationally have concluded that alcoholics are, to some extent, responsible for the onset of the symptoms of their disease, and should bear more responsibility for their workplace conduct than individuals suffering from other diseases.

*Leibbrand*, 107 Wn. App. at 421-22 (footnotes omitted). Again, we agree. The legislature could have rationally distinguished between alcoholics and nonalcoholics because alcoholics bear some responsibility for the onset of their symptoms. *See Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 409, 858 P.2d 494 (1993) (an employee is guilty of misconduct only when his behavior is such that the " 'unemployment is in effect voluntary' ") (quoting *Macey v. Dep't of Employment Sec.*, 110 Wn.2d 308, 316, 752 P.2d 372 (1988)).

## 2. *Erroneous Interpretation or Application of the Law*

■ The Employment Security Act disqualifies a former employee from receiving unemployment benefits if he is "discharged or suspended for misconduct connected with his or her work." RCW 50.20.060. Whether an employee has committed misconduct is a mixed question of law and fact. *Dermond v. Employment Sec. Dep't*, 89 Wn. App. 128, 132, 947 P.2d 1271 (1997).

■■ Misconduct is " 'an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business.' " *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998) (quoting RCW 50.04.293). The employee's conduct must be both "willful" and "harmful." *Hamel*, 93 Wn. App. at 145. To act in "willful disregard," the employee must have (1) been aware of the employer's interest; (2) known or should have known that certain conduct jeopardizes that interest; and (3) nonetheless performed the act, willfully disregarding its probable consequences. *Hamel*, 93 Wn. App. at 146-47.

■ To show that misconduct harmed the employer, " 'actual detriment to the employer's operations must be objectively demonstrated.' " *Leibbrand*, 107 Wn. App. at 426 (quoting *Haney v. Employment Sec. Dep't*, 96 Wn. App. 129, 141, 978 P.2d 543 (1999)). While the harm need not be " 'tangible or economic,' " it must be more than " 'imaginary

or theoretical.' " *Leibbrand*, 107 Wn. App. at 426 (quoting *Haney*, 96 Wn. App. at 141).

Stephens argues that because competing interests were involved, the ESD failed to show the three *Hamel* factors. Specifically, he argues that his impairment due to panic attacks, depression, and alcoholism made it impossible for him to have known that his conduct jeopardized his employer's interest and impossible for him to form a willful disregard of that interest. He claims that the "Last Chance Memorandum," with its arbitrary three-year treatment restriction, was at odds with his need to be a functioning, capable employee.

■ But none of these claims demonstrates an erroneous interpretation or misapplication of the law. While Stephens may disagree with the public policy behind the alcoholism disqualification rule, that disagreement does not make the ESD's interpretation of the statute erroneous or demonstrate that it applied the law incorrectly to his situation.

### 3. *Substantial Evidence*

■ We review an agency's findings of fact for substantial supporting evidence in the record. *Lawter v. Employment Sec. Dep't*, 73 Wn. App. 327, 331, 869 P.2d 102 (1994) (citing RCW 34.05.570(3)). Stephens argues that there is not substantial evidence of intent or harm.

(a) Intent. As noted above, to act in "willful disregard," the employee must have (1) been aware of the employer's interest, (2) known or should have known that certain conduct jeopardizes that interest, and (3) nonetheless performed the act, willfully disregarding its probable consequences. *Hamel*, 93 Wn. App. at 146-47.

■ The stipulated facts set out above support this claim. Stephens voluntarily checked himself into Lakeside/Milam Recovery Center in Everett, Washington, for inpatient treatment of his alcoholism, knowing that doing so would be considered a violation of the terms of the June 18, 1999 "Last Chance Memorandum." Moreover, he had at least

three warnings that leaves of absence to attend alcohol treatment would lead to termination. He had the 1991 "Last Chance Memorandum"; the 1999 "Last Chance Memorandum"; and he spoke with Renee Vaughan, who informed him that if he went into treatment in February 2001, Boeing might terminate his employment.

 (b) Harm. Sharon Ashurst, a human resources representative for the Boeing Company, testified as follows:

> The Company contributes to the cost of treatments up to whatever the limits are in the insurance plan that each individual has chosen. In addition, there are I think costs associated with repeated absences. Dollar value costs and costs to others of work that needs to be reassigned; potential either slides or costing overtime. Overtime can also cost personal impacts to other people of loss of weekends, or evenings, or whatever they may have had planned. So there are personal effects to coworkers, there are probably increased costs associated to the Company, maybe delays in jobs being completed if overtime isn't selected as a means to work around it. The Company clearly loses a trained employee in whom we have an investment in training and on-the-job training. And in the loss of that employee there is potential to have to replace them with someone who may, we may need to invest in that (inaudible).

CR at 27. Based on this testimony, the commissioner found that "the claimant's intentional act of returning to treatment harmed the employer to the extent the employer contributes to the cost of such treatment for its employees, and to the extent of any costs incurred by the interested employer due to the absence of a trained employee such as the claimant." CR at 135. Substantial evidence supports the decision.

*4. Arbitrary and Capricious Action*

 An agency's decision is arbitrary and capricious if it is "willfully unreasonable, without consideration and in disregard of facts or circumstances." *W. Ports Transp., Inc. v. Employment Sec. Dep't*, 110 Wn. App. 440, 450, 41 P.3d 510 (2002) (citing *Buell v. City of Bremerton*, 80 Wn.2d 518,

526, 495 P.2d 1358 (1972)). If the decision is the result of honest and due consideration, it is not arbitrary and capricious even if reasonable minds could disagree with the result. *W. Ports*, 110 Wn. App. at 450. Here, substantial evidence supports the ALJ's decision and the decision applies the correct legal standard.

Stephens asserts that accepting the reasonableness of the three-year provision in the "Last Chance Memorandum" was arbitrary and capricious as the three-year rule is made without any medical input and contradicts medical conventions. He also claims that such a rule arguably violates the Americans with Disabilities Act.

The record shows that Stephens has understood since 1991 that any return to treatment within three years of either the 1991 or the 1999 "Last Chance Memorandum" would lead to his termination. Although Boeing has a program to assist its employees, that assistance need not be limitless. Further, the record is barren as to Boeing's reasons for the three-year requirement as Stephens presented no evidence to challenge its reasonableness below. The commissioner did not act in an arbitrary and capricious manner in finding that Stephens knowingly and voluntarily risked termination by returning to inpatient treatment.

We affirm.

HUNT and VAN DEREN, JJ. concur.