Argued and submitted November 29, 2000, remanded for resentencing; otherwise
affirmed May 9, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## CORNELIUS SHAWNDRA HARRIS,
*Appellant.*

### 98C20767; A98206

25 P3d 404

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction on one count of first-degree burglary with a firearm, ORS 164.225, three counts of second-degree robbery, ORS 164.405, and two counts of second-degree kidnapping, ORS 163.225. The trial court imposed a 70-month mandatory minimum sentence on the robbery counts and a 60-month "gun-minimum" under ORS 161.610, because defendant had "used" a gun during the commission of the crimes. On appeal, defendant assigns error to the imposition of the mandatory minimum sentence on constitutional grounds and to the imposition of the gun-minimum sentence on the ground that there is no evidence that he used a gun during the commission of the crimes. Defendant's constitutional challenge is disposed of by *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den* 522 US 994 (1997). We write to address only the imposition of the gun-minimum sentence.

The facts are not in dispute. Defendant and two other men forced their way into the victim's home to rob him. While searching the house for drugs and money, one of the men found a Winchester bolt-action rifle in the victim's bedroom. The rifle was missing its bolt, however, and was not operational. Defendant told the victim not to look at him or he would beat the victim with the rifle.

Defendant was charged with, among other things, first-degree burglary. The indictment alleged that "during the commission of this felony, the defendant used or threatened the use of a firearm, to wit: a Winchester bolt action rifle." At trial, the state argued that, under ORS 161.610, defendant was subject to a five-year minimum sentence because he used or threatened to "use" a gun during the commission of the crime. At the close of the state's case, defendant moved for a judgment of acquittal on the gun-minimum charge on the ground that threatening to use the rifle as a club does not constitute "use" within the meaning of the statute. The trial court denied the motion, the jury found defendant guilty, and defendant was sentenced accordingly.

On appeal, defendant argues that the trial court erred in denying the motion for judgment of acquittal on the

gun-minimum charge, because the statute applies only when a gun is used *as a gun*, that is, when a defendant discharges or threatens to discharge it. The state argues that, because the statute refers broadly to the term "use or threatened use," *any* use or threatened use will suffice.

ORS 161.610 provides, in part:

"(2)   The use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime * * *.

"(3)   * * * [I]f a defendant is convicted of a felony having as an element the defendant's use or threatened use of a firearm during the commission of the crime, the court shall impose at least the minimum term of imprisonment as provided in subsection (4) of this section. * * *

"(4)   The minimum terms of imprisonment for felonies having as an element of the defendant's use or threatened use of a firearm in the commission of the crime shall be as follows:

"(a)   * * * [U]pon the first conviction for such felony, five years, except that if the firearm is a machine gun, short-barreled rifle, short-barreled shotgun or is equipped with a firearms silencer, the term of imprisonment shall be 10 years.

"(b)   Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years, except that if the firearm is a machine gun, short-barreled rifle, short-barreled shotgun or is equipped with a firearms silencer, the term of imprisonment shall be 20 years."

The question before us is what the legislature intended by employing the term "use." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (objective of statutory construction is to determine the meaning the legislature intended). It is a question of first impression. In *State v. Hallinan*, 92 Or App 125, 757 P2d 446, *rev den* 306 Or 660 (1988), the defendant pointed a rifle at the victim and pulled the trigger. When the rifle failed to fire, the defendant

used it to strike the victim. The defendant argued that hitting the victim did not amount to "use" of the rifle. We held that pointing the gun at the victim and pulling the trigger unquestionably was "use" within the meaning of the statute and declined to address whether employing the rifle as a club was, as well. In this case we address the question left open by *Halliman*.

■ The dictionary definition of the term "use" includes the following:[1]

> "**2** : to put into action or service : have recourse to or enjoyment of : EMPLOY * * * **a** : to speak or write in (a language) * * * **b** : to consume or take (as liquor or drugs) regularly * * * **3** : to carry out a purpose or action by means of : make instrumental to an end or process : apply to advantage : turn to account : UTILIZE * * * **a** : to spend (time) in some occupation, interest, or activity * * * **b** : to make an involuntary or concealed means to one's own ends * * * **c** : to employ a word, phrase, or sentence to refer * * * **4** : to expend or consume by putting to use * * * **6** : to apply or have applied as the usual designation (as a title or surname) of a person * * * USE is general and indicates any putting to service of a thing, usu. for an intended or fit purpose * * *."

*Webster's Third New Int'l Dictionary*, 2523-24 (unabridged ed 1993). Clearly, the term potentially covers a lot of ground. It may be employed very generally to refer merely to "put into action." Or it may be employed more narrowly to refer to putting something to service "for an intended or fit purpose." Or it may be employed still more narrowly to refer to some specific way of putting into action or service, such as consuming, taking advantage of, or denominating. Fortunately, dictionary definitions are only the beginning point, not the end, of determining the intended meaning of a statute. As we explained in *Steele v. Employment Department*, 143 Or App 105, 113-14, 923 P2d 1252 (1996), *aff'd* 328 Or 292, 974 P2d 207 (1999):

> "[M]any of the words in our language have several meanings or shades of meaning. However, it does not follow from the fact that there are several variations of how a word is

---

[1] Archaic usages have been omitted.

defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford and go far in identifying the intended meaning of the word as used in the statute."

*See also State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995) (dictionaries only "suggest what the legislature *could have* meant by the terms it enacted" (emphasis in original)).

We turn, then, to the manner in which the legislature has employed the term. The legislature undoubtedly has used the term "use" in any number of ways throughout the Oregon Revised Statutes, so we limit our inquiry to those statutes involving the "use" of weapons.

Statutes concerning weapons tend to employ the term "use" narrowly to mean "discharge." For example, ORS 163.212(1) provides:

"A person commits the crime of unlawful use of an electrical stun gun, tear gas or mace in the second degree if the person recklessly discharges an electrical stun gun, tear gas weapon, mace, tear gas, pepper mace or any similar deleterious agent against another person."

"Use" in that statute is expressly equated with "discharge[ ]." ORS 163.213 similarly defines the crime of unlawful use of an electrical stun gun, tear gas, or mace in the first degree by the knowing "discharge[ ]" of such weapons.

ORS 166.330, concerning "[u]se of firearms with other than incombustible gun wadding," likewise equates "use" with "discharge":

"Any person who uses in any firearms discharged on lands within this state, not owned by the person, anything other than incombustible gun wadding, shall be punished upon conviction by a fine * * *."

So also does ORS 181.883, concerning the training of private security guards in the "use" of firearms:

"(2)   The training requirements for certification as an armed private security officer are:

"\* \* \* \* \*

"(b)   Fifteen hours of weapons instruction and successful completion of a written examination covering:

"(A)   The legal limitations on the use of weapons;

"(B)   Weapons handling; and

"(C)   Weapon safety and maintenance[.]"

Indeed, in that statute, the legislature drew a distinction between use (discharge) of weapons and weapons handling, safety, and maintenance.

■      The foregoing contextual information establishes that it is at least reasonable to employ the term "use" in the weapons context to refer to discharge; the legislature has done so in a number of instances. That, however, does not necessarily establish that, in ORS 161.610, the legislature intended the term to have that meaning. To be sure, there is a presumption that the legislature uses the same term to mean the same thing in similar contexts. *See, e.g., PGE*, 317 Or at 611 ("use of the same term throughout a statute indicates that the term has the same meaning throughout the statute"); *Racing Com. v. Multnomah Kennel Club*, 242 Or 572, 584, 411 P2d 63 (1966) ("the presumption is that the word was used to express the same meaning in both sections"). But we need not rely on a maxim of construction to determine the legislature's intentions in this case, for the language of ORS 161.610 itself makes clear that the legislature intended the term to have the same meaning that it has employed in the other weapons statutes.

■■      ORS 161.610(2) provides that the "use or threatened use" of a weapon during the commission of a felony subjects a defendant to a gun-minimum sentence. The statute does not explicitly define "use." But the following sections, which describe the penalties for such "use," suggest what the legislature had in mind. ORS 161.610(4)(a) provides that, upon the first conviction, the penalty for the "use" of a firearm is five years. It then provides that, if the firearm is of a particular type, the penalty is doubled. ORS 161.610(4)(b) similarly

provides that, upon subsequent conviction, the penalty for "use" of a firearm is ten years, and, if the firearm is of a particular type, the penalty is doubled. The particular types of weapons that result in the increased penalty include short-barreled rifles, short-barreled shotguns, or firearms equipped with a silencer. It is obvious that the legislature believed that such weapons were more dangerous than firearms generally. But it is equally obvious that those firearms, in fact, are more dangerous only *if discharged*. A short-barreled shotgun, for example, is more dangerous only because, *when discharged*, the buckshot pattern is wider. Similarly, a firearm equipped with a silencer is more dangerous only because, *when discharged*, it makes little noise. Thus, it is evident that the legislature understood "use or threatened use" of a firearm in this context to refer to discharge or threatened discharge.

That reading of the statute is confirmed by consideration of the consequences of construing the statutory term to mean *any* use for *any* purpose, as urged by the state. For example, a burglar who used an inoperable shotgun to prop open a window would be subject to a gun minimum sentence of five years, while a burglar who used an inoperable short-barreled shot gun to prop open the same window would be subject to a sentence of ten years. We can identify no public policy that would be served by such a result. Similarly, and closer to the facts of this case, if a burglar used or threatened to use an inoperable rifle as a club, he or she would be subject to the five-year minimum sentence, but if the burglar used a short-barreled inoperable rifle he or she would be subject to twice the minimum sentence, even though the short-barreled rifle is *less* dangerous when used as a club. Again, we can identify no public policy that would be served by reading the statute in that manner. To the contrary, to read the statute in that manner would be difficult to reconcile with the legislature's stated intention that criminal penalties be proportional to the dangerousness of the offense. *See* ORS 161.025(1)(f) (stating that one of the purposes of the criminal code is to "prescribe penalties which are proportionate to the seriousness of offenses").

■ That is not to say that the legislature *could not* have intended the statute to be read in that fashion. The legislature *could* have intended any number of things. Our function,

however, is to ascertain what the legislature *most likely* intended, given the evidence before us. In this case, given the array of definitional possibilities before us, given the narrow manner in which the legislature has employed the term "use" in other firearms-related statutes, given the manner in which the legislature framed the penalties for firearms "use" in ORS 161.610, and given the general policy of proportionality, we conclude that only one possibility is likely, and that is that the legislature intended "use or threatened use" of a firearm within the meaning of ORS 161.610 to refer to discharge or threatened discharge.

There is no evidence that defendant discharged or threatened to discharge the Winchester that he found in the victim's bedroom. The trial court therefore erred in denying defendant's motion for judgment of acquittal on the gun-minimum charge.

Remanded for resentencing; otherwise affirmed.