IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,314

MARQUISE JOHNSON,
*Appellant*,

v.

BASS PRO OUTDOOR WORLD, LLC,
FABBRICA D'ARMI PIETRO BERETTA, S.P.A.,
and BERETTA U.S.A. CORP.,
*Appellees.*

SYLLABUS BY THE COURT

1.

Appellate courts exercise unlimited review over an order granting summary judgment, viewing the facts in the light most favorable to the nonmoving party. Summary judgment is proper if the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

2.

The Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903, gives firearm manufacturers and sellers immunity from any qualified civil-liability action brought in federal or state court. A qualified civil-liability action is any civil action seeking damages resulting from the criminal or unlawful misuse of a firearm.

3.

Under the Protection of Lawful Commerce in Arms Act, product-liability claims are not qualified civil-liability actions when the firearm is used as intended or in a

reasonably foreseeable manner. But product-liability claims are qualified civil-liability actions when the discharge of the gun was caused by a volitional act that constituted a criminal offense.

4.

The phrase "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense" in 15 U.S.C. § 7903(5)(A)(v) is susceptible to more than one interpretation, so it is ambiguous.

5.

Applying canons of statutory construction, the Protection of Lawful Commerce in Arms Act gives firearm manufacturers and sellers immunity from product-liability claims when a volitional act causes the discharge resulting in death, injury, or damage, and the shooting—including the discharge and the volitional act—constitutes a crime.

6.

Crimes generally consist of both a criminal act and a culpable mental state. And a defendant's mental state is a question of fact that can rarely be determined at the summary judgment stage. But in the case of strict-liability crimes, which have no culpable mental state, courts need only consider whether the conduct and surrounding circumstances constitute an offense.

Review of the judgment of the Court of Appeals in 64 Kan. App. 2d 217, 547 P.3d 556 (2024). Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Oral argument held January 29, 2025. Opinion filed April 25, 2025. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed, and the case is remanded to the district court.

2

*David R. Morantz*, of Shamberg, Johnson & Bergman, Chartered, of Kansas City, Missouri, argued the cause, and *Lynn R. Johnson* and *Richard L. Budden*, of the same firm, *Erin Davis*, pro hac vice, and *Robert Cross*, pro hac vice, of Brady United Against Gun Violence, of Washington, D.C., and *Michael C. Helbert*, of Helbert & Allemang, of Emporia, were with him on the briefs for appellant.

*Craig A. Livingston*, pro hac vice, of Livingston Law Firm, P.C., of Walnut Creek, California, argued the cause, and *Daniel J. Buller*, of Foulston Siefkin LLP, of Overland Park, and *David E. Rogers*, of the same firm, of Wichita, were with him on the briefs for appellees.

*James R. Howell* and *Jakob Provo*, of Prochaska, Howell & Prochaska, LLC, of Wichita, and *Ashley E. Billam*, of Kansas City, Missouri, were on the brief for amicus curiae Kansas Trial Lawyers Association.

*Jerry D. Hawkins*, of Hite, Fanning & Honeyman LLP, of Wichita, *Lawrence G. Keane*, pro hac vice, of National Shooting Sports Foundation, Inc., of Shelton, Connecticut, and *Christopher Renzulli*, pro hac vice, of Renzulli Law Firm, LLP, of White Plains, New York, were on the brief for amicus curiae National Shooting Sports Foundation, Inc.

*Nicole M. Revenaugh*, of Irigonegaray & Revenaugh, L.L.P., of Topeka, and *Mollie Krent*, of Everytown Law, of New York, New York, were on the brief for amicus curiae Everytown for Gun Safety Support Fund.

The opinion of the court was delivered by

WALL, J.: While sitting in a car at a stoplight, André Lewis wanted to show his friend, Marquise Johnson, that he knew how to disassemble his handgun. Lewis believed that he needed to pull the trigger to do so. Lewis also believed that the gun could not fire because he had removed the magazine. But Lewis was wrong, and he shot Johnson in the legs.

Johnson sued Fabbrica d'Armi Pietro Beretta S.p.A. (Beretta Italy), the company that manufactured the gun; Beretta U.S.A. Corp. (Beretta USA), the company that

imported the gun; and Bass Pro Outdoor World, LLC (Bass Pro), the company that sold the gun to Lewis. Johnson alleged that the gun was defective because it lacked safety features that would have prevented a discharge under these circumstances.

Beretta USA and Bass Pro (Firearm Sellers) moved for summary judgment under the Protection of Lawful Commerce in Arms Act (PLCAA), which bars lawsuits against firearm manufacturers and sellers when someone criminally or unlawfully misuses their products. For ease of reference, we refer to this statutory bar on civil actions as PLCAA immunity. The district court granted summary judgment to Firearm Sellers. But in a split decision, the Court of Appeals reversed. We granted Firearm Sellers' petition for review.

The controlling question in this appeal is whether the PLCAA gives Firearm Sellers immunity from Johnson's product-liability lawsuit. The answer depends on whether Johnson's lawsuit is a "qualified civil liability action" under the PLCAA. If so, Firearm Sellers are immune from liability and entitled to summary judgment.

Under the PLCAA, a product-liability action is not a qualified civil-liability action if the gun in question was used as intended or in a reasonably foreseeable manner. But if "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense," then the product-liability action is a qualified civil-liability action and PLCAA immunity applies. 15 U.S.C. § 7903(5)(A)(v).

The parties dispute the meaning of this language in 15 U.S.C. § 7903(5)(A)(v). First, Johnson believes it gives Firearm Sellers immunity only if the person intended to discharge the firearm. Because Lewis never intended to fire the gun, Johnson believes PLCAA immunity does not apply. But Firearm Sellers believe immunity applies if a voluntary act caused the gun's discharge, even if the person never intended to fire it. Because Lewis deliberately pulled the trigger, Firearm Sellers contend that immunity

4

applies. A majority of the Court of Appeals panel adopted Johnson's view. But we hold that Firearm Sellers' interpretation is better reasoned and more accurately reflects Congress' intent as reflected in the text of the PLCAA.

Second, amicus curiae Everytown for Gun Safety Support Fund (Everytown) and Johnson believe that PLCAA immunity applies only if the volitional act, apart from the discharge, constitutes a criminal offense. And because Lewis' trigger pull was not a crime, independent of the discharge, they believe that the PLCAA does not bar Johnson's lawsuit. But Firearm Sellers believe that the PLCAA merely requires that the shooting constitute a crime. Again, we conclude that Firearm Sellers' interpretation better reflects Congress' intent. So construed, the PLCAA bars Johnson's product-liability suit if the shooting constituted a criminal offense.

But Johnson also argues that a fact dispute prevents the court from concluding as a matter of law that Lewis committed a crime. Johnson reasons that a person must act with a culpable mental state to commit most criminal offenses. And the parties offered conflicting evidence as to whether Lewis acted with a reckless state of mind. Thus, under any interpretation of 15 U.S.C. § 7903(5)(A)(v), Johnson believes Firearm Sellers are not entitled to summary judgment.

Indeed, such a fact dispute would ordinarily preclude summary judgment on the PLCAA immunity issue—only a jury could resolve the disputed evidence on the mental-state element of the offense and determine whether the act was criminal. But Lewis discharged the gun on a public road in violation of K.S.A. 2018 Supp. 21-6308(a)(3)(B). And under Kansas law, this is a strict-liability crime. It does not require a party to act with a culpable mental state. So under the unique facts of this case, any dispute about Lewis' mental state cannot save Johnson's lawsuit from the PLCAA's immunity provision. Thus, the panel majority erred by reversing the district court's order granting summary judgment to Firearm Sellers.

5

Lewis bought a Beretta APX 9mm semiautomatic handgun from Bass Pro Shop. During the purchase, Lewis reviewed Bass Pro Shop's "10 Commandments of Safe Gun Handling." The document included rules such as "ALWAYS keep the muzzle pointed in a safe direction" and "NEVER point at anything you don't want to shoot." Lewis spent a few minutes reviewing the rules before signing a form to acknowledge he had read them.

The Beretta APX came with a user manual, which Lewis skimmed through. The user manual explained that the gun could fire even after the magazine had been removed. It also explained that the gun's striker-deactivation button allowed users to disassemble the gun without pulling the trigger. The Beretta APX also had two warnings stamped into the frame of the gun. One stated, "READ MANUAL BEFORE USE." The other stated, "FIRES WITHOUT MAGAZINE."

Several months later, Lewis was driving some of his football teammates home from a team dinner. While stopped at a red light, Lewis pulled the Beretta APX out from under the driver's seat where he stored it. Johnson, who was in the front passenger seat, asked to see it. Lewis removed the magazine and handed the gun to Johnson. After looking at the gun, Johnson returned it and asked Lewis if he knew how to disassemble it.

Lewis said he could take the gun apart in "2.2 seconds" and proceeded to demonstrate while the gun was pointed at Johnson. Based on his experience using handguns, Lewis thought he needed to pull the trigger to remove the slide. And he mistakenly believed the gun would not fire without the magazine. But the gun had a live round in the chamber. So when Lewis pulled the trigger, it discharged the live round, striking Johnson in the legs. Lewis drove Johnson to the hospital. And Johnson's left leg had to be amputated above the knee.

The Emporia Police Department and the Lyon County Attorney's Office both investigated the shooting. But they never arrested or charged Lewis with a crime.

Johnson initially sued Lewis for negligence, but he dismissed this claim with prejudice. Johnson also sued Beretta Italy and Firearm Sellers, alleging that they had produced and sold a defective product. Johnson claimed that the Beretta APX was defective because it lacked certain safety features—a magazine-disconnect safety to prevent the gun from firing without the magazine and a loaded-chamber indicator to alert users when a round is in the chamber.

Firearm Sellers moved for summary judgment. They argued that the PLCAA barred Johnson's product-liability lawsuit because Lewis deliberately pulled the trigger and his conduct was criminal. In response, Johnson argued that PLCAA immunity did not apply because Lewis did not intend to fire the gun. Johnson also argued that Lewis' conduct did not constitute a criminal offense. He believed that any crime that applied to Lewis' conduct required a culpable mental state of recklessness. And there was a fact dispute about whether Lewis acted recklessly.

The district court granted summary judgment to Firearm Sellers. The court found that Lewis had intentionally pulled the trigger, so his act was volitional. And it concluded that this conduct constituted a strict-liability offense—discharge of a firearm upon a public road. Alternatively, the court concluded that Lewis' conduct was reckless as a matter of law. Thus, his conduct constituted other Kansas crimes requiring a reckless state of mind, including battery, aggravated battery, unlawful discharge of a firearm in a city, and endangerment. As a result, the court ruled that Firearm Sellers were entitled to PLCAA immunity.

7

In its order, the district court also found that some of Johnson's evidence was inadmissible. In response to the summary-judgment motion, Johnson offered evidence to show that his injuries were caused by the gun's design—its missing safety features. Johnson relied, in part, on Lewis' statements about what he would have done had he known about, or had the Beretta APX been designed with, a magazine-disconnect safety or loaded-chamber indicator. The district court declined to consider this evidence, finding that it was inadmissible conjecture. But this ruling was not material. The district court did not grant summary judgment to Firearm Sellers on the issue of causation. And the evidence had no bearing on the district court's PLCAA immunity ruling.

Beretta Italy did not join Firearm Sellers' summary-judgment motion. So the court's order was not a final, appealable decision. But the district court authorized Johnson to seek an interlocutory appeal under K.S.A. 2022 Supp. 60-2102(c), finding that the PLCAA immunity issue presented a controlling question of law.

The Court of Appeals granted Johnson's application for interlocutory review. And in a split decision, the majority reversed the district court's PLCAA immunity ruling and its conclusion that Lewis' conduct was reckless as a matter of law. But the panel declined to hear Johnson's challenge to the district court's evidentiary ruling because the issue was not "'inextricably intertwined'" with the controlling question of law that the district court had certified. *Johnson v. Bass Pro Outdoor World*, 64 Kan. App. 2d 217, 237-38, 547 P.3d 556 (2024). In a dissenting opinion, Judge Cline explained that she would have affirmed the district court's judgment that Lewis was reckless as a matter of law and that the PLCAA barred Johnson's product-liability action. 64 Kan. App. 2d at 238-45 (Cline, J., dissenting).

Firearm Sellers petitioned for review. They argued that the panel majority's interpretation of the PLCAA was flawed. They also disagreed with the panel's conclusion that Lewis' conduct was not reckless as a matter of law. Finally, they asked us to reach

8

the merits of the evidentiary issue Johnson raised, even though the district court did not find it to be a controlling question of law when it certified the summary-judgment order for interlocutory appeal.

We granted Firearm Sellers' petition. Jurisdiction is proper under K.S.A. 60-2101(b), which authorizes review of Court of Appeals decisions, and K.S.A. 2024 Supp. 60-2102(c), the interlocutory-appeals statute. Under the plain language of the latter, an appellate court has jurisdiction over the entire order the district court certified for interlocutory appeal, not just the controlling question of law that motivated the district court to certify the order. See K.S.A. 2024 Supp. 60-2102(c) (permitting review of the otherwise unappealable "order" containing the controlling question of law); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996) (interpreting federal interlocutory-appeal statute's identical language to vest appellate court with jurisdiction over "any issue fairly included within the certified order" because "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court"); see also *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 264, 275 P.3d 869 (2012) (following federal precedent in interpreting K.S.A. 60-212[b][2] because it mirrors Fed. R. Civ. Proc. 12).

ANALYSIS

I.  *Johnson's product-liability lawsuit is a qualified civil-liability action and Firearm Sellers are entitled to PLCAA immunity.*

The parties dispute whether this action is a qualified civil-liability action under the PLCAA. If it is, then the PLCAA bars Johnson's product-liability action against Firearm Sellers. But not all product-liability actions are qualified civil-liability actions under the

9

PLCAA. In 15 U.S.C. § 7903(5)(A)(v), Congress specified that product-liability actions are subject to PLCAA immunity when "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense."

The parties offer conflicting interpretations of 15 U.S.C. § 7903(5)(A)(v). They dispute whether PLCAA immunity applies when a party never intended to fire the gun and whether the volitional act alone must constitute a crime. And, in applying 15 U.S.C. § 7903(5)(A)(v), they dispute whether Lewis' conduct constituted a criminal offense.

To resolve these disputes, we begin by identifying the legal framework and standard of review guiding our analysis. Then, we interpret 15 U.S.C. § 7903(5)(A)(v), addressing whether PLCAA immunity can apply to unintentional shootings and whether the volitional act alone must constitute a criminal offense. Finally, we apply our statutory interpretation to the facts and conclude that the PLCAA bars Johnson's product-liability suit against Firearm Sellers.

A.  *The standard of review and relevant legal framework are well established.*

The PLCAA immunity issue was decided on summary judgment. We exercise unlimited review over summary-judgment orders, viewing the facts in the light most favorable to the nonmoving party. *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94, 472 P.3d 53 (2020). Summary judgment is proper if the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *John Doe v. M.J.*, 315 Kan. 310, 313, 508 P.3d 368 (2022).

The immunity issue also requires us to interpret the PLCAA. Courts exercise unlimited review when interpreting a statute. *In re Wrongful Conviction of Spangler*, 318 Kan. 697, 701, 547 P.3d 516 (2024). "The guiding principle in statutory interpretation is that legislative intent governs if that intent can be ascertained." *State v. Strong*, 317 Kan.

10

197, 203, 527 P.3d 548 (2023). Because the plain language of the statute is the best indicator of legislative intent, we begin by considering that language, giving common words their ordinary meaning while accounting for both the specific context in which the language appears and the broader statutory framework. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022); *Landrum v. Goering*, 306 Kan. 867, 872-73, 397 P.3d 1181 (2017). If the statute's language is ambiguous, we may then consider canons of construction and legislative history to resolve the ambiguity. *State v. Martin*, 318 Kan. 538, 549, 544 P.3d 820 (2024). We cite these rules frequently when interpreting Kansas statutes. But the same principles apply when we interpret laws enacted by Congress. See, e.g., *United States v. White*, 782 F.3d 1118, 1131-32 (10th Cir. 2015); *Southern Ute Indian Tribe v. Sebelius*, 657 F.3d 1071, 1078 (10th Cir. 2011).

B. *15 U.S.C. § 7903(5)(A)(v) gives Firearm Sellers immunity if a voluntary act causes the discharge and the shooting constitutes a crime.*

Before we interpret 15 U.S.C. § 7903(5)(A)(v), it is important to understand how Congress crafted, and the panel majority interpreted, the PLCAA's immunity provisions. After providing this background, we proceed to the statutory interpretation.

On its surface, the PLCAA immunity provision is straightforward. It provides that "[a] *qualified civil liability action* may not be brought in any Federal or State court." (Emphasis added.) 15 U.S.C. § 7902(a). So what is a qualified civil-liability action? The answer is more complex.

Congress generally defined the term as to include any civil action brought against a manufacturer or seller of guns or ammunition shipped in interstate commerce for damages resulting from the "criminal or unlawful misuse" of these products. 15 U.S.C. § 7903(5)(A). But it recognized several exceptions to this general definition.

11

Of significance here, Congress excluded certain product-liability claims from the definition of a qualified civil-liability action:

> "The term 'qualified civil liability action' . . . shall not include . . . an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, *except that where the discharge of the product was caused by a volitional act that constituted a criminal offense*, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage." (Emphasis added.) 15 U.S.C. § 7903(5)(A)(v).

Thus, Johnson's product-liability lawsuit is a qualified civil-liability action if "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v).

The Court of Appeals majority interpreted this language in 15 U.S.C. § 7903(5)(A)(v) to exclude product-liability claims if the person never intended to discharge the gun. The majority first concluded that 15 U.S.C. § 7903(5)(A)(v) is ambiguous and must be reconciled with Congress' intent. *Johnson*, 64 Kan. App. 2d at 234. To resolve this ambiguity, the majority reasoned that Congress intended to give gun manufacturers and sellers immunity from product-liability lawsuits in situations involving intentional criminal shootings but not accidental ones. 64 Kan. App. 2d at 234-35. According to the majority, the circumstances here fell somewhere between an intentional and accidental shooting—where PLCAA immunity is "unsettled." 64 Kan. App. 2d at 235. So, it applied the presumption-against-preemption canon of statutory construction to conclude that 15 U.S.C. § 7903(5)(A)(v) does not bar product-liability claims if the person unintentionally discharged the gun. Based on this interpretation, the majority concluded that Johnson's product-liability lawsuit is not a qualified civil-liability action because "Lewis did not intend for the gun to discharge when he pulled the trigger. The shooting was not a volitional act, it was accidental." 64 Kan. App. 2d at 234-35.

12

In a dissenting opinion, Judge Cline disagreed. She would have held that the plain language of 15 U.S.C. § 7903(5)(A)(v) only requires that the act causing the gun to discharge be volitional. 64 Kan. App. 2d at 241-42, 244 (Cline, J., dissenting). And she faulted the majority for effectively rearranging the statute's language to require the discharge itself to be volitional. 64 Kan. App. 2d at 244 (Cline, J., dissenting).

On review, Firearm Sellers adopt Judge Cline's interpretation of 15 U.S.C. § 7903(5)(A)(v). Johnson defends the majority's view. We agree with the panel majority that 15 U.S.C. § 7903(5)(A)(v) is ambiguous. But we disagree with its interpretation of this provision.

1. *15 U.S.C. § 7903(5)(A)(v) is ambiguous.*

Like the panel majority, we conclude that 15 U.S.C. § 7903(5)(A)(v) is ambiguous. This provision specifies that the PLCAA bars a product-liability action if "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense." But this language is susceptible to more than one reasonable interpretation, rendering it ambiguous. See *Glaze v. J.K. Williams*, 309 Kan. 562, 564, 439 P.3d 920 (2019) ("'A statute is ambiguous when two or more interpretations can fairly be made.'").

As Firearm Sellers observe, that phrase could mean that a product-liability action is subject to PLCAA immunity if the volitional act and the resulting discharge of the gun constitute a crime. Under this interpretation, the volitional act is viewed as part of the criminal act or *actus reus* of the conduct constituting a crime. But as Johnson and amicus curiae Everytown note, the phrase could also mean that the PLCAA bars product-liability actions only if the volitional act alone constitutes a criminal offense. Under this interpretation, the volitional act must be more than the actus reus—it must constitute a crime even before the gun discharges.

13

As the panel observed, several courts in other jurisdictions have interpreted 15 U.S.C. § 7903(5)(A)(v). See *Johnson*, 64 Kan. App. 2d at 230-34 (discussing decisions from other jurisdictions). But they have offered divergent opinions regarding its interpretation and scope. This corroborates our conclusion that the statute is ambiguous.

Based on this ambiguity, the lower courts and parties embrace conflicting interpretations of 15 U.S.C. § 7903(5)(A)(v). To resolve these issues, we turn to the structure and context of 15 U.S.C. § 7903(5)(A)(v) and relevant canons of statutory construction. Through this analysis, we conclude that the PLCAA bars a product-liability action if: (1) a voluntary act caused the gun to fire, even if the person did not intend to discharge the weapon, and (2) the shooting, considering both the voluntary act and discharge, constitutes a criminal offense.

We reach this conclusion in three steps. First, we explain why the panel majority's interpretation of 15 U.S.C. § 7903(5)(A)(v) is flawed. Second, we address whether the volitional act alone must constitute a criminal offense and conclude that Congress intended to bar product-liability actions if the shooting, not just the volitional act, constitutes a crime. Finally, we explain why our complete interpretation of 15 U.S.C. § 7903(5)(A)(v) is reasonable and preferable to the alternatives.

2. *15 U.S.C. § 7903(5)(A)(v) does not require an intentional discharge as a condition precedent to PLCAA immunity.*

We begin by addressing the panel majority's interpretation of 15 U.S.C. § 7903(5)(A)(v). The relevant statutory language provides that product-liability actions are subject to PLCAA immunity, if "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense." The panel interpreted this language to impose an

14

intent requirement. In other words, PLCAA immunity applies only if the person intended to discharge the weapon. But the statutory text forecloses the panel's interpretation.

We begin with "volitional." The PLCAA does not define the word, so we look to its ordinary meaning. See *State v. Hambright*, 318 Kan. 603, 607-08, 545 P.3d 605 (2024) (courts assume the Legislature intends a word to have its ordinary and common meaning if the word is not defined); see also *Adames v. Sheahan*, 233 Ill. 2d 276, 314, 909 N.E.2d 742 (2009) (looking at dictionary definitions of "volitional" when interpreting PLCAA). Black's Law Dictionary 1892 (12th ed. 2024), defines "volition" as "1. The ability to make a choice or determine something. 2. The act of making a choice or determining something. 3. The choice or determination that someone makes." And Oxford American Dictionary and Thesaurus 1723 (2003), defines "volition" as "the exercise of the will" or "the power of willing."

So, an act is "volitional" if someone chooses and determines to do it or willfully does it. See *Adames,* 233 Ill. 2d at 314 (juvenile's acts were "volitional" for purposes of PLCAA because he chose and determined to do them). In that sense, "volitional" and "voluntary" have a similar meaning. See Oxford American Dictionary and Thesaurus 1723 (2003) (listing "voluntary" as synonym for "volitional"); Black's Law Dictionary 1892 (12th ed. 2024) (defining "voluntary" as "[d]one by design or intention"). And an act may be voluntary even when the actor is unaware of or does not intend the consequences. See *State v. Dinkel*, 311 Kan. 553, 560, 465 P.3d 166 (2020) (distinguishing voluntary act, which is an intentional bodily movement, from intentional mental culpability, which is the conscious desire to engage in certain conduct or to produce a certain result).

And the term "volitional" modifies "act," not "discharge." This grammatical structure suggests that the pertinent question is not whether the gun's discharge was volitional, but whether the act causing the discharge was volitional. See *Adames*, 233 Ill.

15

2d at 314 (juvenile's acts of pointing gun and pulling trigger were volitional even if juvenile did not intend to discharge gun); see also *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 548 (D. Ariz. 2021) ("[T]he mere fact the Shooter did not *intentionally* shoot the Plaintiff or fire the gun does not mean she did not act *volitionally*.").

The plain meaning of "volitional" and the fact that it modifies "act" instead of "discharge" undermines the panel majority's statutory interpretation. As Judge Cline explained in her dissent, "[b]y requiring the discharge to be volitional, the majority's interpretation rearranges the [PLCAA's] language by reading the word volitional to modify the word discharge." *Johnson*, 64 Kan. App. 2d at 244 (Cline, J., dissenting).

But Johnson and the majority contend that their interpretation is justified when reading the language of 15 U.S.C. § 7903(5)(A) together and in harmony. They explain that Congress generally defined a qualified civil-liability action to include a civil action where damages resulted from the "criminal or unlawful misuse" of a gun. 15 U.S.C. § 7903(5)(A). But for product-liability claims specifically, such claims are qualified civil liability actions only if the shooting constitutes a "criminal offense." 15 U.S.C. § 7903(5)(A)(v). Johnson argues that "criminal" and "criminal offense" must mean something different than "unlawful misuse." And to give meaning to these terms, he believes that the former must be interpreted to include an intent requirement. See *Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.").

We agree that "criminal offense" and "unlawful misuse" have different meanings. The PLCAA does not define "criminal" or "criminal use." So we look to its ordinary meaning. "Criminal" means "[h]aving the character of a crime; in the nature of a crime." Black's Law Dictionary 402 (8th ed. 2004). And a "crime" is "[a]n act that the law makes punishable; the breach of a legal duty treated as the subject matter of a criminal

16

proceeding." Black's Law Dictionary 399 (8th ed. 2004). In contrast, Congress defined "unlawful misuse." The statutory definition includes "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9). In short, a "criminal offense" refers specifically to the violation of criminal law. But "unlawful misuse" includes violations of statutes, ordinances, and regulations. So, the term "unlawful misuse" includes "much more than conduct constituting a 'criminal offense,' as there are many acts which violate statutes and ordinances but do not trigger criminal penalties." *Travieso*, 526 F. Supp. 3d at 547.

But the fact that these terms have different meanings does not support the conclusion that 15 U.S.C. § 7903(5)(A)(v) imposes an intentional-discharge requirement. In fact, the ordinary meaning of "criminal" or "criminal offense" does not include an intent requirement. A person can commit a "criminal offense" without acting intentionally. See K.S.A. 21-5202(b). And in some instances, a person can commit a "criminal offense" without any culpable state of mind. See K.S.A. 21-5203. Congress' use of the different terms ("unlawful misuse" and "criminal offense") simply reflects its intent to give gun manufacturers and sellers immunity in most civil actions where injuries resulted from the gun's criminal *or* unlawful misuse. 15 U.S.C. § 7903(5)(A). But in product-liability actions specifically, Congress narrowed the scope of immunity to situations in which the gun's discharge constitutes a crime. 15 U.S.C. § 7903(5)(A)(v).

3. *PLCAA immunity applies in product-liability actions if the shooting, including the volitional act and discharge, constitutes a criminal offense.*

Our statutory analysis confirms that Congress did not limit PLCAA immunity in product-liability cases to situations involving an intentional discharge of a weapon. Instead, immunity may apply if a voluntary act caused the gun's discharge. But this does

17

not resolve the ambiguity we identified in the statute. The question remains whether the volitional act alone must constitute a criminal offense, apart from the discharge and resulting damage or injury.

Johnson and Everytown contend that we look to the volitional act only to determine whether the underlying conduct constitutes a criminal offense. They base this interpretation on the following phrase in 15 U.S.C. § 7903(5)(A)(v): "a volitional act that constituted a criminal offense." Read in isolation, the interpretation is not unreasonable because the phrase "constituted a criminal offense" modifies the noun "volitional act." See *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (under last antecedent rule, limiting clause or phrase ordinarily read as modifying immediately preceding noun or phrase). But when construing statutes, we do not consider isolated parts alone. Rather, we consider the text of the entire statute and try to bring its provisions into workable harmony, if possible. *Bruce*, 316 Kan. at 224; see also *Wyoming v. United States*, 279 F.3d 1214, 1230 (10th Cir. 2002) (When construing statutes, courts "'must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law.'").

When we consider the language in context, a more reasonable reading becomes apparent: the incident causing the injury—that is, the gun's discharge coupled with the volitional act—must be a crime. This interpretation is favored for at least three reasons.

First, it is the most logical reading of 15 U.S.C. § 7903(5)(A)(v) because the volitional act—the trigger pull—is inextricably linked to the gun's discharge. They are part of a single, uninterrupted act. Thus, both should be considered together when determining whether the incident constitutes a criminal offense.

18

Second, this interpretation is more consistent with the PLCAA's focus and legislative intent. The PLCAA applies to certain civil lawsuits in which a gun has been discharged. And the circumstances surrounding that discharge determine whether PLCAA immunity applies.

For example, the PLCAA generally defines a qualified civil-liability action to include civil lawsuits in which the "damages" resulted from the "misuse" of the gun. 15 U.S.C. § 7903(5)(A). "Misuse" is a type of use. See Oxford American Dictionary and Thesaurus 958 (2003) (defining "misuse" as "use wrongly; apply to the wrong purpose"). And a person "uses" a gun by firing it. See *State v. Harris*, 174 Or. App. 105, 111-12, 25 P.3d 404 (2001) ("use" in the firearms context means discharge). By coupling the "misuse" of a firearm with "damages," 15 U.S.C. § 7903(5)(A) presumes that the discharge of a gun gave rise to the qualified civil-liability action.

The same focus continues in 15 U.S.C. § 7903(5)(A)(v), which addresses product-liability actions specifically. This subsection clarifies that product-liability claims are not qualified civil-liability actions when "death, physical injuries or property damage" result from a product defect and the gun is "*used* as intended or in a reasonably foreseeable manner." (Emphasis added.) 15 U.S.C. § 7903(5)(A)(v). Again, by linking the use of a gun with damages, the statute focuses on the circumstances surrounding the gun's discharge. This subsection later references "discharge" explicitly. It clarifies that a product-liability lawsuit is a qualified civil-liability action when "the *discharge* of the [gun] was caused by a volitional act that constituted a criminal offense." (Emphasis added.) 15 U.S.C. § 7903(5)(A)(v).

The PLCAA immunity provisions focus on a gun's discharge and the circumstances surrounding that discharge. Interpreting 15 U.S.C. § 7903(5)(A)(v) to require that the volitional act alone constitute a criminal offense, apart from the gun's discharge, would be inconsistent with this focus. In contrast, interpreting the statute to

19

require that the shooting constitute a crime is more consistent with Congress' intent to shift liability away from gun manufacturers and sellers when a gun is criminally misused. See 15 U.S.C. § 7901(b)(1) (One purpose of PLCAA is to prohibit causes of action against manufacturers and sellers "for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.").

Finally, by interpreting 15 U.S.C. § 7903(5)(A)(v) to bar product-liability actions when the shooting—the volitional act and discharge—constitutes a crime, we give meaning to all parts of this statutory subsection. *Martin*, 318 Kan. at 552 (Courts generally prefer constructions that give effect to all parts of a legislative act.). In contrast, Johnson's and Everytown's interpretation would render portions ineffective and frustrate its purpose. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 63 (2012) ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").

This is apparent when reading 15 U.S.C. § 7903(5)(A)(v) in its entirety. In this subsection, Congress excluded some, but not all, product-liability claims from the definition of a qualified civil-liability action. Product-liability claims are not qualified civil-liability actions when injuries result directly from defects in the gun's design or manufacture and the gun was used as intended or in a reasonably foreseeable manner. 15 U.S.C. § 7903(5)(A)(v). But when the criminal misuse of a gun causes or contributes to the injury—that is, when "the discharge of the [gun] was caused by a volitional act that constituted a criminal offense"—a product-liability claim *is* a qualified civil-liability action. 15 U.S.C. § 7903(5)(A)(v). Thus, when injury occurs because a gun is both defective and criminally misused, Congress has provided that the criminal misuse "shall be considered the sole proximate cause of any resulting death, personal injuries or property damage." 15 U.S.C. § 7903(5)(A)(v).

20

Johnson's and Everytown's interpretation would bar product-liability actions only if the volitional act alone constituted a crime. But this interpretation is flawed because an act, on its own, will almost never be a crime. Generally, the "volitional act" that "cause[s]" "the discharge of the [gun]" will be a trigger pull. But a trigger pull, in isolation, is not a crime. Everytown suggests that a trigger pull will constitute a criminal attempt. But an attempt requires proof of a culpable mental state—an intent to commit the object crime. See 1 Wharton's Criminal Law § 7:3 (16th ed. 2024). If we can consider only the volitional act—the trigger pull—this act alone will never be a crime. Such an interpretation would frustrate Congress' clear intent to bar product-liability actions when a gun is criminally misused.

4. *Our statutory construction of 15 U.S.C. § 7903(5)(A)(v) is reasonable.*

In sum, we interpret 15 U.S.C. § 7903(5)(A)(v) to bar product-liability claims when a volitional act—such as a deliberate trigger pull—causes the gun to discharge, and the shooting constitutes a criminal offense. Under this interpretation, firearm manufacturers and sellers may be immune from product-liability claims when someone deliberately pulls the trigger, causing an intentional or unintentional discharge, and the shooting—including the volitional act and discharge—constitutes a crime. Other courts have interpreted and applied 15 U.S.C. § 7903(5)(A)(v) in the same fashion. See *Travieso*, 526 F. Supp. 3d at 548; *Adames*, 233 Ill. 2d at 314.

Johnson and other amici curiae express concern that no product-liability action could survive under this interpretation. But that is not the case. Under our interpretation of 15 U.S.C. § 7903(5)(A)(v), the PLCAA would not bar product-liability actions if the discharge was involuntary. In other words, if the gun discharged without a volitional act, like a trigger pull, then PLCAA immunity would not apply. Likewise, the PLCAA would not bar product-liability claims if the shooting did not constitute a criminal offense. Even

21

when the discharge constitutes an "unlawful misuse" of the gun, PLCAA immunity is not certain. If the underlying conduct violated only statutes, regulations, or ordinances that do not subject a person to criminal penalty, then PLCAA immunity would not apply.

We also recognize that one canon of statutory construction could weigh against our interpretation—the presumption against preemption. Under that canon, courts generally presume that federal statutes do not preempt state law. Scalia & Garner, Reading Law:  The Interpretation of Legal Texts, p. 290 (2012). So, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 77, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). This canon would typically disfavor PLCAA interpretations that bar product-liability actions recognized in Kansas statute and common law.

But here Congress' intent to preempt state law is express and unequivocal. See 15 U.S.C. § 7902(a) ("A qualified civil liability action may not be brought in any Federal or State court."). And it is questionable whether the presumption against preemption even applies in the face of this express language. See, e.g., *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125, 136 S. Ct. 1938, 195 L. Ed. 2d 298 (2016) (declining to apply presumption against preemption in interpreting express preemption clause); see also *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 323 (Mo. 2016) (declining to apply presumption against preemption to PLCAA's express preemption clause); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 387-88 (Alaska 2013) (same). But see *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (applying presumption against preemption to support narrow interpretation of scope of express preemption clause). Moreover, our interpretation rests on a fair understanding of congressional intent as expressed in the text of the PLCAA. See *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) ("Congress' intent . . .

primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it."). Under these circumstances, the presumption-against-preemption canon does not compel us to adopt a different interpretation.

C.  *Firearm Sellers are entitled to PLCAA immunity because the discharge of Lewis' gun was caused by a volitional act and the shooting constituted a criminal offense.*

15 U.S.C. § 7903(5)(A)(v) bars Johnson's product-liability action against Firearm Sellers if:  (1) the gun's discharge was caused by a volitional act; and (2) the shooting constituted a crime. The summary judgment record confirms that there are no genuine issues of fact as to these two statutory requirements. Thus, the panel majority erred by reversing the district court's summary-judgment order.

First, the uncontested facts show that a volitional act caused the discharge of the gun. The parties do not dispute that Lewis deliberately pulled the trigger. And Lewis' trigger pull caused the discharge—that is, but for the trigger pull, the gun would not have discharged. See *Burrage v. United States*, 571 U.S. 204, 211, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014) ("'Conduct is the cause of a result' if 'it is an antecedent but for which the result in question would not have occurred.'" [quoting Model Penal Code § 2.03(1)(a)]).

Johnson argues that Lewis' trigger pull was not volitional because Lewis (mistakenly) believed he had no choice but to pull the trigger to disassemble the gun. But Lewis could have chosen not to disassemble the gun. So, his mistaken belief that the trigger pull was necessary does not mean the act was involuntary.

Johnson also argues that the discharge was not caused by a volitional act. He explains that if the gun had been designed with a magazine-disconnect safety, then it would not have fired when Lewis pulled the trigger. But even if this were true, Lewis still

23

had to pull the trigger to cause the discharge. And Johnson does not dispute that Lewis deliberately pulled the trigger. So the discharge was caused by a volitional act. Further, under the statute, if the discharge is caused by a volitional act that constitutes a criminal offense, then "such act" is deemed to be the "sole proximate cause" of any resulting injuries. 15 U.S.C. § 7903(5)(A)(v). So even if the gun's design contributed to Johnson's injuries, the PLCAA would still bar his suit against Firearm Sellers because, as we explain next, the act constituted a crime.

Second, the shooting constituted a criminal offense. The uncontroverted facts show that Lewis discharged the gun while on a public road, which is a crime in Kansas. See K.S.A. 2018 Supp. 21-6308(a)(3)(B). The parties dispute whether Lewis acted with a culpable mental state of recklessness. But the Court of Appeals held that K.S.A. 2018 Supp. 21-6308(a)(3)(B) is a strict-liability crime. *Johnson*, 64 Kan. App. 2d at 229. Because Johnson did not cross-petition for review, the Court of Appeals holding on this matter remains settled in Firearm Sellers' favor. See Supreme Court Rule 8.03(i)(1) (2025 Kan. S. Ct. R. at 59); *State v. McBride*, 307 Kan. 60, 62, 405 P.3d 1196 (2017).

Even so, the panel's reasoning is sound. K.S.A. 21-5202(g) clarifies that if the definition of a crime prescribes a culpable mental state for some elements but not others, then a culpable mental state is required only for those specified elements. The statute defining criminal discharge of a firearm, K.S.A. 2018 Supp. 21-6308, sets forth several means of committing that crime. For some, the statute sets forth a culpable mental state of recklessness. See K.S.A. 2018 Supp. 21-6308(a)(1) and (a)(2). But the statute specifies no culpable mental state for discharge of a firearm upon a public road. See K.S.A. 2018 Supp. 21-6308(a)(3)(B). This drafting choice demonstrates that the Legislature did not intend for that version of criminal discharge to have a mental culpability requirement. In other words, the Legislature made K.S.A. 2018 Supp. 21-6308(a)(3)(B) a strict-liability offense. See *State v. Dinkel*, 314 Kan. 146, 158, 495 P.3d 402 (2021) (applying K.S.A.

24

2018 Supp. 21-5202[g] to rape statute and holding no mental culpability requirement for rape of a child because rape statute provides a culpable mental state for some means of committing rape but not for rape of a child); see also K.S.A. 21-5203 (person may be guilty of a felony crime without having a culpable mental state if the statute indicates this intent).

We acknowledge that if K.S.A. 2018 Supp. 21-6308(a)(3)(B) was not a strict-liability offense, then we could not determine whether Lewis' conduct constituted a crime as a matter of law. That's because most criminal offenses require proof that a person both engaged in prohibited conduct (the *actus reus*) and did so with a culpable mental state (the *mens rea*). *United States v. Apfelbaum*, 445 U.S. 115, 131, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980); *State v. Ta*, 296 Kan. 230, 242, 290 P.3d 652 (2012). A person's mental state is a question of fact that can rarely be decided on summary judgment. *Cf. State v. Burrell*, 237 Kan. 303, 308, 699 P.2d 499 (1985) ("The existence of wantonness is a question of fact for the jury."). And here, Johnson created a fact dispute about whether Lewis acted with a reckless mental state. That dispute would have foreclosed summary judgment in most instances. See *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1318, 144 Cal. Rptr. 3d 326 (2012) (summary judgment under PLCAA inappropriate because there was a disputed issue of material fact whether crime was committed).

But K.S.A. 2018 Supp. 21-6308(a)(3)(B) is a strict-liability offense. And a person commits this crime by conduct alone—discharging a firearm on a public road—even when acting without a culpable mental state. And because there is no dispute that Lewis discharged the gun on a public road, the shooting constituted a crime as a matter of law. Because Lewis' volitional act caused the gun's discharge and his conduct constitutes a criminal offense, the PLCAA bars Johnson's product-liability suit against Firearm Sellers.

25

II. *Because Firearm Sellers are entitled to PLCAA immunity, we need not address their other issues on review.*

Firearm Sellers seek review on two other issues. But we need not reach them given our conclusion that the PLCAA bars Johnson's product-liability claims.

First, Firearm Sellers argue that the panel majority erred by concluding that Lewis' conduct was not reckless as a matter of law. That issue is relevant only to whether the discharge violated criminal statutes other than K.S.A. 2018 Supp. 21-6308(a)(3)(B). But we held that the PLCAA bars Johnson's product-liability claims against Firearm Sellers because Lewis' discharge violated K.S.A. 2018 Supp. 21-6308(a)(3)(B), a strict-liability crime. And we need not consider whether Lewis may have committed other crimes.

Second, Firearm Sellers invite us to reach the merits of the district court's evidentiary ruling on summary judgment, which excluded some of Johnson's causation evidence. The Court of Appeals declined to address Johnson's challenge on jurisdictional grounds. The panel concluded that it lacked what courts call "pendent . . . interlocutory jurisdiction" because the evidentiary issue was not "'inextricably intertwined'" with the PLCAA immunity issue the district court found to be a controlling question of law. *Johnson*, 64 Kan. App. 2d at 237-38.

The panel's reliance on pendent jurisdiction was unnecessary. Appellate jurisdiction in interlocutory appeals extends to any issue fairly included in the certified order, not just the controlling question of law that prompted certification. K.S.A. 2024 Supp. 60-2102(c). But given our conclusion that Firearm Sellers are entitled to summary judgment, they have no continuing interest in the district court's evidentiary ruling.

26

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed, and the case is remanded to the district court.

BILES, J., not participating.